MARY CROSS *vs.* GEORGE M. ALBEE.

SAME *vs.* ROY R. STIMPSON.

Worcester. September 22, 1924. — October 18, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Negligence,* Of dentist, Of etherizer. *Evidence,* Presumptions and burden of proof. *Dentist. Physician.*

In an action against a physician for alleged negligence in etherizing a patient being operated upon by a dentist, the plaintiff specified that the defendant " was specially engaged to treat the plaintiff with medicine and perform the duties of an anaesthetist in course of her dental operation. That anaesthetizing a patient is a serious and dangerous operation causing violent action upon the brain proper and other portions of the central nervous system and a resultant effect upon the digestive organs of the patient. That to make the treatment reasonably safe and successful requires a careful diagnosis and chart of the patient's previous health, constitution and susceptibility and a reasonable preparation and regulation of the same before the ether application." There was no evidence at the trial to warrant a finding in accordance with the specifications except that the defendant was employed by a dentist to administer ether to the plaintiff. There was no evidence tending to show negligence on the part of the defendant. A verdict was ordered for the defendant. *Held,* that the verdict properly was ordered.

Where, at the trial of an action against a physician engaged to etherize the plaintiff, the defendant is called and his testimony tends to show lack of negligence on his part, and there is no other testimony appearing on the question of his alleged negligence, it is proper to order a verdict for the defendant, since the jury must find for the defendant in case they believe his testimony and mere disbelief of his testimony would not sustain the burden of establishing the affirmative proposition that he was negligent.

At the trial of an action against a dentist for injuries and sickness alleged to have resulted from negligence of the dentist in pulling teeth of the plaintiff, there was no evidence that there was any reason why the defendant should examine the plaintiff as to her general physical condition, or that proper preparations for the operation were not made, or that proper tools, equipment and instrumentalities were not used, or that the defendant failed to use his instruments properly, or that he was called upon to examine and study the physical condition of the plaintiff further than appeared from an examination of the plaintiff's mouth and teeth, or that any instructions could have been given by the defendant to the plaintiff before the operation, the observance of which would have prevented her subsequent illness of the character described

in her evidence. The defendant was not a physician and was not consulted by the plaintiff as a physician. *Held*, that

(1) It was no part of the defendant's duty after the operation to inform the plaintiff of the nature of the physical illness which is alleged to have resulted therefrom;

(2) The furnishing by the defendant to the plaintiff, on a return by her to him after the operation, of a mouth wash to heal her gums was not shown to have been improper treatment;

(3) The defendant was under no implied obligation to treat the plaintiff for pain under her shoulder or general debility after she had returned home, or to keep himself advised of the condition of the plaintiff's mouth and teeth;

(4) Under his employment, it was no part of the duty of the defendant to prescribe remedies for ailments which were within the province of medicine and not of dentistry.

At the trial of the above action, in addition to the issues above described, a further issue was, whether or not the defendant properly inserted a pack in the plaintiff's mouth to keep the blood from going down the throat and to prevent possible lung infection. The defendant testified that a proper pack was used. A medical expert testified for the plaintiff that he never had seen a pack like it used. Another witness for the plaintiff, who was waiting in a connecting room, testified that she did not see a pack, but there was no evidence that her attention was fixed on the details of the operation. *Held*, that

(1) There was no evidence warranting a finding that the plaintiff had sustained the burden of proving affirmatively that a proper pack was not used;

(2) A verdict properly was ordered for the defendant.

Two ACTIONS OF TORT, the first against a physician and the second against a dentist, to recover for personal injuries to the plaintiff's health alleged to have attended and resulted from the extraction of her teeth by the defendant in the second action, at which the defendant in the first action attended as etherizer. Writs dated August 3, 1922.

In the Superior Court, the actions were tried together before *O'Connell*, J. Material evidence is described in the opinion. At the close of the plaintiff's evidence, verdicts were ordered for the defendants. The plaintiff alleged exceptions.

*E. A. Ryan*, for the plaintiff.

*C. W. Blood*, for the defendant Albee.

*C. C. Milton*, (*F. L. Riley* with him,) for the defendant Stimpson.

BRALEY, J. These are actions of tort to recover damages for personal injuries alleged to have been caused by the

negligence of the defendant Albee, a practising physician, and of the defendant Stimpson, engaged in the practice of dentistry. The cases were tried together and at the close of the plaintiff's evidence a verdict for each defendant was ordered, and the cases are before us on her exceptions.

The plaintiff, a married woman, testified, that she was in perfect health August 23, 1921, when, accompanied by her aunt, Mrs. Swicker, she went to Dr. Stimpson for dental treatment because of an " ailing tooth," and told him she had a toothache and " wanted it examined, and her teeth treated." The defendant examined her teeth, said the tooth was very sore, and " suggested extracting it and the rest of my decayed teeth " which " he counted . . . and said twenty would be taken out. I said all right, and he said, you come back in twenty minutes. I will have a doctor here to give you ether. . . . I said all right, and I went out . . . walked on the street . . . and came back. . . . The dentist and physician were in the office." She stepped into the chair, closed her eyes, and Dr. Albee, who " had no instruments and did absolutely nothing to her before giving her ether. . . . it took quite a while to give ether, about ten minutes, I should say." Dr. Stimpson extracted twenty teeth, including the sore tooth located in the lower jaw. The plaintiff further testified, after the operation, " I remember the dentist dragging me off the chair on to the couch and then I relapsed, I went to sleep. I remained in the dentist's office until 5:45. . . . Mrs. Swicker, was with me. I think she took care of me until half past five or until quarter of six." Upon returning " home I was very sick. . . . That next week I was sick all the week, lying down most of the time; I was drooling, very foul drooling and my gums were very sore. I couldn't eat, and they wouldn't seem to heal. I had the experience the first week of a slight pain in my right shoulder blade . . . . I have never experienced anything like that before the dental operation." The plaintiff applied for treatment to Dr. Stimpson, who gave her a mouth wash, but her condition did not improve. " The drooling turned into foul sputum . . . so foul that at first she could not expectorate but had to swallow it, the odor was so

strong." Physicians were consulted, the last of whom advised her to go to Rutland, where she remained from October to January 1, 1922. It is unnecessary to describe the treatment at the sanatorium, which she left because of pregnancy, and returned home. The pain under her right shoulder blade continued; she was weak, unable to work, and after giving birth to her child March 30, her condition " was very poor, with cough, raising foul sputum, so that she had not been able to work or nurse or take care of her baby." It is the plaintiff's contention that these physical conditions and consequent suffering were caused by the negligence of the defendants.

In reply to motions for specifications the plaintiff in the action against Dr. Albee states,

" 1. That the defendant George M. Albee was specially engaged to treat the plaintiff with medicine and perform the duties of an anaesthetist in course of her dental operation. That anaesthetizing a patient is a serious and dangerous operation causing a violent action upon the brain proper and other portions of the central nervous system and a resultant effect upon the digestive organs of the patient. That to make the treatment reasonably safe and successful requires a careful diagnosis and chart of the patient's previous health, constitution and susceptibility and a reasonable preparation and regulation of the same before the ether application. The plaintiff alleges that in this respect the defendant George M. Albee did not use due and reasonable care, but treated the plaintiff in a negligent and unskilful manner.

" 2. That instant with the dental operation with the application of ether, the duty of the defendant George M. Albee was to use reasonable care, which he failed to do.

" 3. That subsequent to the dental operation, to assure the patient of a safe and full recovery requires reasonable attention, nursing and care; that defendant failed to exercise said due and reasonable care and attention and provide necessary nursing but disregarded the same, and discharged his duties in a careless and negligent manner."

And in the action against Dr. Stimpson,

" 1. He failed to properly examine the plaintiff, as to her physical condition before the operation on her teeth.

" 2. He failed to make proper preparations for the operation which he performed upon the plaintiff.

" 3. He failed to use proper precautions in course of the operation of the plaintiff in the form of agencies which would prevent foreign matter to enter the lungs or contaminating the plaintiff's body.

" 4. That he failed to use the proper tools, equipment and instrumentalities in his operation on the plaintiff, and failed to use his instruments properly.

" 5. That the defendant was negligent in that he failed to treat the diseased teeth of the plaintiff to eliminate all infection in the plaintiff's mouth before he proceeded with the etherization of the plaintiff.

" 6. That the defendant failed to examine and study the physical condition of the plaintiff before the operation and failed to instruct her how to prepare herself for the operation that it might not produce dangerous results.

" 7. That the defendant was careless in pulling the teeth.

" 8. That after said operation, the defendant was negligent and violative of his duty to apprise the plaintiff of the nature of the physical illness which developed recent to and as a result of said operation, and of his failure to see that the plaintiff received proper and necessary treatment.

" 9. That after said operation, the defendant displayed a degree of ignorance or want of knowledge in his failure to recognize the sick condition of the plaintiff, from her symptoms displayed and described to him at his office within two weeks subsequent. The defendant was ignorant in that respect and degree where a reasonably capable dentist under like circumstances would be knowing and intelligent, and the defendant's ignorance amounts to negligence for which he is liable to the plaintiff in damages.

" 10. That the defendant was negligent subsequent to the operation in failing to keep himself advised of the condition of the plaintiff's mouth and teeth, and the failure to treat said teeth and gums so as to relieve the plaintiff of cause of injury."

·The general rule is well settled. It was the duty of the defendants in the practice of their respective professions to possess a reasonable degree of learning and skill and to exercise ordinary care and diligence. *Harriott* v. *Plimpton,* 166 Mass. 585, 588. *Toy* v. *Mackintosh,* 222 Mass. 430, 432. *Burk* v. *Foster,* 114 Ky. 20; 59 L. R. A. 277. The defendant Albee was specially called to administer ether to the plaintiff whose uncontradicted statement is that she was then in perfect health. The plaintiff fully understood he was not employed as a general practitioner to prescribe for her ailment, and become her attendant physician, or to provide necessary nursing because of her alleged enfeebled state caused by and following the extraction. No evidence was offered on which the jury would be warranted in finding that etherizing a patient to produce insensibility to pain arising from the extraction of teeth " is a serious and dangerous operation," or that "to make the treatment reasonably safe and successful required a careful diagnosis and chart of the patient's previous health, constitution and susceptibility and a reasonable preparation and regulation of the same before the ether application."

The plaintiff called the defendants as witnesses, and their evidence in direct and cross-examination forms the bulk of the record. If they were believed by the jury, no lack by Dr. Albee of the use of adequate medical knowledge or of professional skill was shown. If they were disbelieved, the remaining evidence as matter of law is insufficient to warrant a finding of causal connection between any negligent act of this defendant and the physical ills from which the plaintiff contended she suffered after the operation. · *Small* v. *Howard,* 128 Mass. 131; 35 Am. Rep. 363. .*Chesley* v. *Durant,* 243 Mass. 180.

The dental operations were under the sole direction and control of Dr. Stimpson. The general condition of her teeth was known by the plaintiff and when he said that they were decayed and should be extracted she assented. The evidence of Dr. Stimpson as to the dental conditions revealed by clinical examination, which is not ·challenged, shows that the plaintiff was suffering from upper broken down abscessed

teeth, with some abscessed condition around the gums, and fistula running from the ends of the roots, of the gums, and pus drooling into her mouth. The plaintiff's first, second, fourth, sixth and seventh specifications in the action against Dr. Stimpson were not supported by any evidence. The scope of his employment was to extract her teeth. If the evidence of this defendant that all ordinary preliminary steps were taken in accordance with established practice is put aside, it does not appear that there was any reason why he should examine the plaintiff as to her general physical condition, or that proper precautions for the operation were not made, or that proper tools, equipment and instrumentalities were not used, or that he failed to use his instruments properly, or that the defendant was called upon to examine and study the physical condition of the plaintiff further than appeared from an examination of the plaintiff's mouth and teeth, or that any instructions could have been given before the operation the observance of which would have prevented her subsequent illness of the character described in her evidence. The defendant is not a physician nor was he consulted and employed by the plaintiff as a physician. It was no part of his duty after the operation to inform the plaintiff of the nature of the physical illness which is alleged to have resulted therefrom. The furnishing of her application of a mouth wash to heal the gums and to stop the drooling is not shown to have been improper treatment. The defendant was under no implied obligation to treat the plaintiff for pain under her shoulder or general·debility after she had returned home, or to keep himself advised of the condition of the plaintiff's mouth and teeth, and there is no evidence that he was expressly hired to prescribe remedies for ailments which were within the province of medicine and not of dentistry.

The plaintiff contended that because proper and ordinary precautions were not taken during the process of extraction, certain poisonous matter or particles from the teeth or gums passed into, and infected her right lung, causing an abscess which has very seriously affected and impaired her health. The third and fourth specifications raise this issue. It could

be found on the testimony of the defendants that in opera-
tions of the character described in the record, the proper
practice is, to insert a pack to keep the blood from going
down the throat, and to prevent possible lung developments.
The plaintiff, while accepting and relying on this evidence,
which was the only evidence relating to practice, rejects their
further statements that a proper pack was prepared and used.
If the jury made this distinction, even then the plaintiff had
not made out a case.   A pack said by the defendants to be
similar to the pack used was introduced in evidence, and
Dr. Simmons, the plaintiff's medical expert, went no farther
than to say that she had never seen a pack like it used.   But
this is no evidence that a proper pack was not used.   The
plaintiff to meet the situation called Mrs. Swicker as a wit-
ness.   The attention of the witness on her own evidence
does not appear to have been focussed on the details of the
operation; she was merely waiting in a connecting room
while it was performed.   The negative statement, that under
such conditions she did not see a pack, cannot be considered
as the equivalent of affirmative proof, the burden of which
rested on the plaintiff, that the defendant did not use a pack.
*Menard* v. *Boston & Maine Railroad,* 150 Mass. 386, 387.
*Slattery* v. *New York, New Haven & Hartford Railroad,* 203
Mass. 453, 457.   *Killam* v. *Wellesley & Boston Street Railway,*
214 Mass. 283, 284.

The verdicts were ordered rightly and in each case the
entry must be,

*Exceptions overruled.*