H. E. CHILCOTE, Appellant, v. CHICAGO & NORTHWESTERN RAILROAD COMPANY, Appellee.

1094

NOVEMBER 13, 1928.

C. C. *Orvis,* for appellant.

*Devitt & Eichhorn, Davis, McLaughlin & Hise* and *James C. Davis, Jr.,* for appellee.

MORLING, J.—Plaintiff and his helper, Dorman, while riding on a "gas hand car" in a cut, were suddenly confronted with an extra freight train, approaching from the opposite direction. Plaintiff jumped, and sustained injuries for which he sues. Plaintiff assigns sixteen "points" of error, of which we find it necessary to consider only those relating to the exclusion of testimony offered to show negligence on the part of the defendant, and the sufficiency of the evidence of defendant's pleaded negligence to go to the jury.

The accident occurred in the morning, while plaintiff was returning from a trip of inspection, which had taken him over the entire length of his section. The general direction of defendant's line is east and west, but the mile or more of track with which we are here concerned is in reverse curves, laid in a cut, along which were weeds and some timber, whereby, and by the banks, vision, except for short distances, was obstructed. The accident occurred in this cut. The general direction of this part of the track is north and south; but it will be spoken of, as it is in most places in the evidence, as east and west. The grade is quite heavy, rising from west to east. The morning was foggy.

The pleaded negligence is that the whistle was not sounded

or the bell rung for a highway crossing, which was somewhat more than a half mile east (strictly, almost north) from the place of the accident; that no warning or signal of the approach of the extra was given; and that the speed was excessive. There is no evidence as to the rate of speed.

Respecting the failure to give warning, defendant's rules are:

"A track car must not be used on the main track when view is not clear on account of fog or other weather conditions, unless properly protected. It must not be taken from the track at public or private crossings except in emergency."

Also:

"A person operating a track car will be held responsible for all accidents, and must protect himself and others against accidents. He must not expect others to protect themselves."

Plaintiff says the only way he knew of to protect the track car was to get a line up at a pumping house or a station,—which he did not do, and the sufficiency of his excuses wherefor we need not take time to consider; for there is nothing to show that the company or the train men on the extra had any reason to think that the section men were in the cut, or were not acting in compliance with the rules. Defendant was furnished with the rules, and was familiar with them. Though their admission in evidence on plaintiff's cross-examination was objected to, the objection was properly overruled. We may notice, at this point, the sustaining of defendant's objection to a question asked plaintiff, namely:

"Q. I will ask you what was the custom of the railroad on this reverse curve as to sounding the whistle or ringing the bell at the time they entered the cut at the place where you had the collision with the train?"

Custom and plaintiff's knowledge of and reliance upon it are not pleaded. The ruling was correct. 39 Corpus Juris 929, 930. Plaintiff, as a witness, sought to testify with regard to rules requiring the use of headlights on foggy days. The court properly sustained objections to this line of evidence for the same reason,—

namely, that negligence with respect thereto was not pleaded; and further, on plaintiff's testimony, about to be set out, the ruling was without prejudice.

On the way out that morning, plaintiff and his helper heard the crossing whistle of a regular freight train. Plaintiff says that in that case he saw the lights for something over three fourths of a mile; also, that they stopped and listened, "because we always stopped and listened on the curves,—almost always,—not always." We may say with respect to this item of evidence that the fact that the plaintiff and helper, under the circumstances thus related, made timely discovery of the regular train is not evidence that they used their faculties, or were in position to hear the whistle or bell, if sounded, under the different conditions attending the approach of the extra, about to be related.

This brings us to the sufficiency of the evidence of the pleaded negligence to go to the jury. The particular question of fact is whether there is testimony upon which the jury might base a finding that the whistle was not sounded or the bell rung for the highway crossing, as pleaded. This depends on the further inquiry whether the witnesses testifying on the subject were in a position physically, and in an attitude mentally, both to hear and to be impressed with the fact of the absence of the blowing of the whistle, if it was not blown, or the ringing of the bell, if it was not rung. Plaintiff testifies:

"Q. You did not stop at the curve and listen, just when you met this extra train, did you? A. No, sir. * * * Q. Well, then, there wasn't anything except your failure to keep looking, was there? A. Well, I expect I just glanced off or something. That is all I know. * * * Q. The only reason that you did not see it sooner was because you did not look at it sooner? A. I guess that is right. Q. If you had been looking, you could have seen it at least 300 feet away from you? A. Well, something like that. I could not tell you exactly."

The whistling post for the highway crossing here under consideration is 80 rods east of the crossing. While the speed of the train is not shown, that of the track car was 8 or 10 miles per hour. If the whistle was sounded for this crossing, plaintiff must have been from it not only the distance of the whistling post from the place of accident,—more than three quarters of a mile,

—but the additional distance which he would cover while the train was moving from the whistling post to the place of the accident. Plaintiff's testimony is that he did not see or hear the extra; but the only place at which he claims to have listened was "at the public crossing about a half a mile west of the reverse curve where the accident occurred. * * * We stopped there possibly a minute. After that stop, we traveled from 8 to 10 miles per hour. I was sitting with my back in the direction we were going, at the front end of the car, as we were moving east, and looking east over my right shoulder. Mr. Dorman was sitting farther west, on the other end of the car, which was the rear end, as the car was backing east. * * * Q. How close were you to that train when you first saw that train? A. Well, I would say about 90 or 120 or 150 feet. I could not say exactly. * * * The train was so close that I knew that the only thing to do was to say 'jump,' and to jump as quick as I could; and I called to Dorman to jump."

The hand car was moving backward; was going up grade, at 8 or 10 miles per hour. It appears without dispute that the motor car was making much noise. The helper says:

"When we were coming back from the end of the section, and met the extra train with which our car collided, motor car was coming up a pretty stiff hill, and the exhaust was unusually loud and strong. We had been coming uphill all the distance after we had started back from the end of the section, for about three miles and a half, and the motor had been making a very loud noise from the exhaust all of that distance. The wheels of the motor were metal wheels, and the rails were steel. Metal wheels running on metal rails at about 8 or 10 miles an hour makes a good deal of noise, just of themselves. * * * Just before we hit this train, we could see the train coming from the east, about 300 feet,—possibly a little more than that. I cannot tell exactly."

He says that, when they heard the regular way freight previously, the motor was not running, so there was no noise from it. The helper's testimony is also:

"Q. Did they give any warning, ring the bell or anything, at that crossing [to the east]? A. I did not hear it."

It is manifest from the testimony of the plaintiff and his helper that they were not listening for the sounding of the whistle at the crossing, or for the ringing of the bell (unless those events, if they occurred, happened while they were at the west crossing, which would be at least a mile and a half away). That the train would be at the whistling post in question while they were at the west crossing is not merely speculative; it is, on the facts, quite improbable. Plaintiff and his helper not only do not appear to have been so situated physically as to have heard the whistle, if sounded, or in a condition of mental alertness or attention to have heard it, but the contrary fairly appears. One other witness (Hartog) gave testimony on the subject. He lived in the neighborhood of the east crossing, about a quarter of a mile from the track. "We were about half way between the schoolhouse and the track, and I suppose the schoolhouse was about a half a mile from that crossing." Whether he refers to the location of his premises or himself does not appear. He says he heard the train rumble "when it went through."

"Q. Do you know whether or not they whistled or rang the bell before they went across that crossing, or not,—answer of your own knowledge, whether you know or not? A. I did not hear it. Q. When did you first hear the whistling of that train? A. When it struck the gas car."

There is a total absence of evidence of where this witness was when the train was at the whistling post. There is no evidence that he was so situated that he could have heard, or that he was in such a mental attitude of attention that he would have noticed failure to blow or ring. There is no evidence whatever that he was alert, observing, listening, or that his mind was at all on the subject. He was asked:

"Q. You may state whether or not that train going south whistled for that crossing when it crossed." Also: "Q. Did it ring a bell before it went across that railroad crossing?" Also: "Q. Were there any whistles or ringing of that bell from the time you heard it until it got down there where it struck the gas car?"

The court sustained objections to these questions, and properly so, because of the total absence of proof of such physical

and mental situation and attitude as would make it probable that he would have heard and noticed, and because, in the absence of such showing, his answer, if more than his statement that he "did not hear," would be the merest opinion.

Plaintiff urges that, as there is no positive evidence that the whistle did not blow, and as there is no evidence contrary to that of himself and his two witnesses, their testimony is "affirmative evidence and substantive proof." He argues that there was such evidence in cases previously decided by this court.

The effect and weight of such testimony as we have here has been frequently discussed by us. *Hoffard v. Illinois Cent. R. Co.*, 138 Iowa 543; *Payne v. Chicago & N. W. R. Co.*, 108 Iowa 188; *Bannister v. Illinois Cent. R. Co.*, 199 Iowa 657; *Hines v. Chicago, M. & St. P. R. Co.*, 196 Iowa 109; *Brossard v. Chicago, M. & St. P. R. Co.*, 167 Iowa 703; *Anderson v. United States R. Adm.*, 203 Iowa 715. See *Lehigh Valley R. Co. v. Mangan*, 278 Fed. 85; 22 Corpus Juris 554. The question is not, as counsel argues, whether the defendant had produced positive evidence that the whistle was blown or the bell rung. The burden of proof is not on the defendant, to exonerate itself from negligence, but on the plaintiff, to prove the negligence alleged. *Cross v. Albee*, 250 Mass. 170 (145 N. E. 45). The plaintiff might have produced numberless witnesses to testify that they did not hear the bell ring or the whistle sound, but such testimony, of itself, proves nothing further than that the witness did not hear, unless the witnesses are shown to have been in a position to hear, and unless they were noticing, or the proved circumstances are such as to raise a presumption that they were attentive to the fact, and would have heard if the sounds were made. In the absence of such showing, the testimony is negative only. Where the train was when the neighbor heard it rumble, is not shown at all. It might have been then west (or south) of the whistling post. There is no evidence as to where it probably was when plaintiff and his helper listened at the crossing. It might have been at the next crossing east, which was an underground crossing, or it might have passed the whistling post.

Clearly, plaintiff and Dorman were not likely to hear the whistle at the crossing, unless it was during the minute at the west crossing at which plaintiff says he was listening. The noise of the motor and of the wheels would prevent their hearing,

especially when they evidently were not listening. The testimony of plaintiff and Dorman that they did not hear the whistle was not inadmissible. It was properly in the record,—if for no other reason, on the question of contributory negligence; but it had no tendency, of itself, to prove that the whistle was not sounded or the bell not rung. Such negative evidence may have value, but there must be evidence or circumstances to show that the witness was so situated and his attitude of mind was such as to render it probable that the signal would have been heard and noticed, if given. The negative statement, in the absence of evidence making it equivalent to affirmative proof, cannot be accepted as affirmative evidence. *Cross v. Albee*, 250 Mass. 170 (145 N. E. 45.) ; *Wetherill v. Showell, Fryer & Co.*, 264 Pa. St. 449 (107 Atl. 808) ; 23 Corpus Juris 40, 41. The statements of these witnesses were intrinsically without probative value. We do not hold that evidence having intrinsic value may be rejected, if it is in the record, merely because it would be incompetent if objection had been made. We hold here that the testimony of the three witnesses to the effect that they did not hear the whistle or the bell is wholly unsupported by circumstances from which it may be found that they would have heard and would have noticed if the whistle had been blown or the bell rung, and is, therefore, without any weight whatever. In *Wiar v. Wabash R. Co.*, 162 Iowa 702, the plaintiff testified to diligence both in handling his machine and in looking and listening for the approach of the train.—*Affirmed*.

Stevens, C. J., and Faville, De Graff, and Albert, JJ., concur.