C. R. WRIGHT, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.

No. 43070.

584

September 22, 1936.

Rehearing Denied April 9, 1937.

John S. Tuthill and Keohane & Kuhfeld, for appellant.

J. G. Gamble & R. L. Reed and Swisher, Swisher & Cohrt, for appellee.

Stiger, J.—This is an action by the administrator of the estate of F. J. Shattuck, deceased, for damages for injuries received by decedent, September 15, 1930, resulting in his death, when the automobile owned and driven by Oscar Tysver, in which Shattuck was riding as a guest, was struck by a Rock

Island train in Rock Rapids, Iowa, at the intersection of federal highway No. 75 and defendant's tracks. The highway runs north and south and the railway tracks run east and west. The automobile was approaching the intersection from the north and the train was approaching the intersection from the west. The highway was in good condition and there were no diverting circumstances. Neither Shattuck nor Tysver was familiar with this crossing.

The plaintiff alleges that defendant was negligent in the following particulars:

1. Failure to erect an adequate sign where the railway crosses the highway to give notice of the proximity of the railway and to warn persons of the necessity of looking out for trains as required by Code section 8000.

2. Failure to sound the whistle and ring the bell as required by section 8018.

3. In running its train at the excessive and dangerous speed of fifty miles an hour.

At the crossing the main track is on the north and the switch track on the south. North of the crossing is a cement bridge about eighty feet long and sixty-eight feet wide. The distance from the center of the main track north to the center of the bridge is one hundred feet. Six hundred feet north of the tracks is a highway sign warning travelers that they are approaching a railway crossing. There was a cross-arm or crossbuck sign containing the words "railroad crossing" in large letters, fifty-two feet south of the main track and thirty-nine feet south of the switch track on the east side of the highway. There was no such sign north of the tracks and on the west side of the highway.

The view to the west for at least nine hundred feet from the highway was unobstructed for a distance of one hundred fifty feet north of the tracks. The tracks run straight west from the crossing for a distance of seven hundred feet and then turn to the southwest.

The Tysver car was in good mechanical condition.

Mr. Tysver testified that he saw the highway sign six hundred feet north of the tracks and thereafter was keeping a lookout for trains. When he drove onto the bridge he was driving twenty-five miles an hour. When he reached the middle of the bridge, which was one hundred feet north of the main track he

heard a long continuous blast of a train whistle, heard the bell and saw the train approaching from the west. When Tysver reached the center of the bridge and saw the train he applied the brakes and was gradually slowing down before he left the bridge. He had almost stopped when he reached the track and then turned to the left in an attempt to miss the engine, but he failed in this attempt and the engine struck his car. Tysver first saw the cross-arm sign when he reached the bridge. With regard to this sign he testified as follows:

"Seeing the cross-arm sign on the left side of the road first brought my attention to the fact I was about to cross over a railroad track."

He could see the tracks to the east but testified that he could not see the rails where they crossed the highway from the bridge. Plaintiff's witness, Earl B. Cossan, an engineer, testified that the rails were visible at the crossing from a distance of fifty feet north and that the planking and the crossing itself were visible from the north end of the bridge and probably visible for a distance of two hundred feet north of the crossing.

 Both parties admit that Tysver could have stopped his car in time to have avoided the accident and we take judicial notice of the fact that a car in good mechanical condition and with good brakes traveling at a speed of twenty-five miles an hour can be stopped in a less distance than one hundred feet.

Mr. Tysver was clearly guilty of negligence.

At the conclusion of plaintiff's evidence defendant moved for a directed verdict on the following grounds:

1. F. J. Shattuck was guilty of contributory negligence.

2. The defendant was not shown to have been guilty of any negligence.

3. Irrespective of negligence on the part of defendant the negligence of Tysver was the sole proximate cause of the injuries to and the death of Mr. Shattuck.

This motion was sustained generally. Plaintiff appeals.

 On the question of contributory negligence on the part of the decedent the evidence reveals that Shattuck observed the train approaching from the west about the same time that Tysver first observed it, that is when the automobile was in the center of the bridge one hundred feet north of the crossing, and told Tysver that a train was approaching. Tysver immediately com-

menced to reduce the speed of the car and did so down to the point of the collision.

In the case of Bradley v. Interurban R. R. Co., 191 Iowa 1351, 1354, 183 N. W. 493, 495, which was an action for personal injuries growing out of an automobile accident we stated:

"Within reasonable limits, the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver. He cannot physically interfere with the driver's control of the car, without peril of disaster. He may, under proper circumstances, sound an alarm, if he sees danger ahead of which the driver seems oblivious; but even then he must still, to some extent, place his reliance upon the driver to avoid it. There is no rule of law which obliges him to forcibly seize the steering wheel and wrest it from the hands of the owner, or to jump from the rapidly moving vehicle to certain injury or death."

Shattuck exercised his faculties, looked to the west, saw the train approaching, warned Tysver of the approach of the train and Tysver immediately reduced the speed of the car. Shattuck was unfamiliar with this highway and crossing. Under this record, the question as to whether or not Shattuck performed his duty to use reasonable care for his own safety was for the jury, and the court erred in holding that Shattuck was guilty of contributory negligence as a matter of law.

█ █ █ Plaintiff claims that because defendant did not have a cross-arm sign north of the tracks and on the west side of the highway, the defendant failed to comply with Code section 8000, which requires that a railroad corporation shall, at all points where such railroad crosses any public road, erect at such points a sign with large and distinct letters placed thereon to give notice of the proximity of the railroad and warn persons of the necessity of looking out for trains.

Assuming, without deciding, that it was the duty of the defendant to maintain a sign north of the tracks and west of the highway, there was no causal relationship between such negligence on the part of the company and the injuries to Mr. Shattuck.

The sign south of the tracks was in plain view for a distance of one hundred and fifty feet north of the tracks. Tysver saw this sign when he was one hundred feet north of the main track

and thus he was warned of the proximity or nearness of the railroad and of the necessity of looking out for trains. Furthermore Tysver, independent of this sign or any sign required by said section 8000, had knowledge of the proximity of the railroad and of the necessity of looking out for trains. He saw the highway warning sign six hundred feet north of the tracks and from that moment was on the lookout for trains. Both Tysver and Shattuck saw the train approaching from the west when it was at least two hundred and fifty feet west of the crossing and they were one hundred feet north of the crossing. Tysver saw the tracks east of the crossing. The failure to erect a sign north of the railroad and west of the road was not a proximate cause of the accident.

Plaintiff claims defendant was negligent in failing to give statutory signals in approaching the crossing. Code section 8018 provides that a bell and steam whistle shall be placed on each locomotive engine and the whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed.

Three witnesses for the plaintiff, other than Tysver, testified they heard the long blast of the whistle but did not hear the bell or any other whistle prior to the long blast. The testimony of these witnesses is without any weight because they were not in a position or mental attitude to have heard the signals had they been given. Chilcote v. Chicago & N. W. R. Co., 206 Iowa 1093, 221 N. W. 771.

Tysver was on the lookout for trains from the time he saw the highway sign six hundred feet north of the tracks and testified he heard no bell or whistle until he reached the bridge.

Tysver heard the long blast of the whistle and the bell when he was at the center of the bridge and in time to stop his car and avoid the accident. He saw the train in time to have stopped the car and avoid the accident. One who has full knowledge of the presence of a train in ample time to have avoided the injury may not predicate proximate cause on the absence of signals. Having seen the train in time to have stopped the automobile, the negligence, if any, of the defendant in failing to give the statutory signals was not a proximate cause of the accident. Frush v. Waterloo C. F. & N. R. Co., 185 Iowa 156, 169 N. W. 360.

■■ We now turn to plaintiff's allegation that the defendant was negligent in operating the train at a speed of fifty miles an hour. The defendant concedes that, under the facts and circumstances of the case this specification of negligence was for the jury.

The defendant claims that the negligence of Tysver was the sole proximate cause of the death of Shattuck irrespective of negligence on the part of defendant.

The jury might have found that defendant was negligent in operating its train at fifty miles an hour. If it did so find there would be two concurrent acts of negligence cooperating at the time of the collision to produce the result.

In the case of Dedina v. Chicago, M. St. P. & P. R. Co., 220 Iowa 1336, 1340, 264 N. W. 566, 568, the facts were similar to the facts in this case. With reference to defendant's contention that, though it was negligent in operating its train at an excessive speed, it was not liable because the negligence of the driver of the car was the sole proximate cause of plaintiff's injuries, Mr. Justice Richards, speaking for the court, states:

" '* * * the vice of the argument consists in the attempt to separate into two distinct causes (remote and proximate) what in reality is but one continuous cause; that is to say, an attempt to separate two inseparable negligent acts which, uniting to produce the result, constituted mutually contributing acts of negligence on the part of the railroad company and the driver of the automobile.' "

Assuming that the jury would have found that the defendant was negligent in operating its train at fifty miles an hour, under the record we hold that the negligence of Tysver was not an intervening, sole proximate cause of the accident, superseding the negligence of the defendant. Dedina v. Chicago, M. St. P. & P. R. Co., 220 Iowa 1336, 264 N. W. 566. For a general discussion of the question of proximate cause and concurrent negligence, see Parmenter v. City of Marion, 113 Iowa 297, 85 N. W. 90.

This specification of negligence should have been submitted to the jury.

For the reasons given, the case is reversed.—Reversed.

PARSONS, C. J., and RICHARDS, ALBERT, and HAMILTON, JJ., concur.