365 F.2d 785
 ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation, Appellant,
v.
Alan E. KEAN, Administrator of the Estate of Ferdinand Karol, Deceased, and Arco Auto Carriers, Inc., Appellees.
Alan E. KEAN, Administrator of the Estate of Ferdinand Karol, Deceased, Appellant,
v.
ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation.
 No. 18223.
 No. 18224.
 United States Court of Appeals Eighth Circuit.
 September 15, 1966.
 
 COPYRIGHT MATERIAL OMITTED Robert M. Bertsch and E. Marshall Thomas, of O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, Iowa, for Illinois Cent. R. Co.
 Alfred E. Hughes, Dubuque, Iowa, for Alan E. Kean, Admr. of Estate of Ferdinand Karol and others.
 Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 The Illinois Central Railroad Company appeals from a judgment of $43,127.10, rendered on a jury verdict for the wrongful death of Ferdinand Karol and property damage to trailer unit of Arco Auto Carriers, Inc. We reverse and in part remand.
 
 
 2
 On the morning of May 9, 1962, Ferdinand Karol was driving a tractor and semi-trailer unit with its cargo of automobiles westward along Iowa U.S. Highway 20. Karol owned the tractor, while the trailer and the cargo were owned by his employer, Arco Auto Carriers, Inc. West of the town of Dyersville, Iowa, the tracks of the Illinois Central Railroad run generally parallel to Highway 20, in an east-west direction, and at a point about two and one-half miles west of Dyersville, Highway 20 passes under the Illinois Central tracks. Karol, however, was unable to continue his westward journey along Highway 20 because the low vertical clearance in this underpass would not permit passage of his unit. With the aid of Officer Elliot, of the Dyersville Police, who happened upon the scene, Karol turned the tractor-trailer unit around and headed back eastward along Highway 20. Officer Elliot had instructed Karol how to get across the tracks and back to the main highway without using the underpass.
 
 
 3
 At this location, Highway 20 runs parallel to and about 50 feet south of the Illinois Central tracks. Approximately a mile east of the underpass, Highway 20 turns to the south. However, a dirt road runs from Highway 20 at the point of the turn and continues on a straight course parallel to the tracks. This dirt road continues east for about 500 feet and then intersects at approximate right angles a north-south gravel road, but the northerly turn which Karol had to make was at an acute angle, somewhat less than ninety degrees. The gravel road proceeds northerly and in doing so crosses the nearby Illinois Central tracks at about 74 feet north of where the dirt road intersects the north-south gravel road.
 
 
 4
 After turning around at the underpass, Karol traveled east on Highway 20 and, rather than turning south with the highway, he continued straight and entered upon the dirt road. When the dirt road ran into the north-south gravel road, Karol turned left (north) and paused for about eight to ten seconds a few feet south of the tracks. As he proceeded to cross the tracks the cab of his truck was struck by an eastbound Illinois Central passenger train. Karol died the following morning of injuries sustained in the accident.
 
 
 5
 Suit was filed by the Administrator of the Estate of Ferdinand Karol for wrongful death, medical expenses, pain and suffering, property damage; and by Arco Auto Carriers, Inc. for damage to the trailer portion of the truck and the cargo of automobiles. The defendant, Illinois Central Railroad, in turn counterclaimed against Arco Auto Carriers for damage to the train due to the alleged negligence of Ferdinand Karol, the driver and agent of Arco Auto Carriers. The Illinois Central, on the basis of diversity, removed the case from the Iowa state court to the United States District Court for the Northern District of Iowa. The jury returned a verdict for plaintiffs in the amount of $43,127.10. Defendant, Illinois Central, appeals. Plaintiffs cross-appeal, seeking interest from the time of the accident.
 
 I.
 
 6
 Plaintiffs' allegations of negligence were in two divisions, of two counts each. We will first consider the second count of each division. Count 2 alleged negligence on the part of the railroad in failing to properly sound a steam whistle as required by statute, in failing to keep an adequate lookout, and in failing to give proper warning to motorists of the unusually dangerous nature of the crossing. All of these allegations of negligence were submitted to the jury. Under the circumstances of this case, we believe such a submission was error.
 
 
 7
 As to these particular allegations of negligence, under the Iowa law then applicable,[1] the burden was upon plaintiffs to plead and prove freedom from contributory negligence. Peterson v. Davis, 254 Iowa 1359, 121 N.W.2d 111 (1963). Proof of due care on the part of the deceased is an element of the plaintiffs' cause of action and, as such, it is a necessary prerequisite to granting recovery. Failure to carry this burden would entitle defendant to a directed verdict on these allegations of negligence.
 
 
 8
 Plaintiffs offered no direct evidence of the due care exercised by deceased. Rather, they relied upon a presumption recognized by Iowa law and commonly known as the "no eyewitness rule." Under that rule, the deceased, in the absence of an eyewitness who can testify as to his activities during the material moments preceding the accident, is presumed to have been acting in the exercise of ordinary care for his safety. Edwards v. Perley, 223 Iowa 1119, 274 N.W. 910 (1937); Mast v. Illinois Central R. Co., 176 F.2d 157 (8 Cir. 1949). However, "where there is eyewitness proof of the actions of the decedent, from observations either of his conduct or the movements of his vehicle, through the material moments preceding the collision, the no eyewitness rule and its presumption are * * * without any application." (Emphasis supplied) Chicago, R. I. & P. R. Co. v. Lovejoy, 206 F.2d 77, 81 (8 Cir. 1963). Chicago, Rock Island & Pacific Railroad Company v. Breckenridge, 333 F.2d 990 (8 Cir. 1964).
 
 
 9
 In the case before us, the engineer of the train testified that he first observed the truck driven by deceased as it turned from the dirt road onto the gravel road. He observed the truck come to a stop some six to eight feet south of the tracks and remain stopped for approximately seven or eight seconds. He then observed the truck drive directly in front of the train. Traveling at 70 miles per hour, even immediate emergency braking was incapable of preventing the collision. The testimony of the fireman was very similar to that of the engineer. The fireman indicated that he observed the truck soon after the train passed the viaduct crossing of Highway 20, which was about a mile from the place of the accident, and that he continually observed the truck as it turned onto the gravel road, stopped clear of the tracks for a few seconds and then started into the path of the approaching train.
 
 
 10
 The record, therefore, reveals the testimony of two eyewitnesses who observed and were able to testify as to the movements of the vehicle through the material moments preceding the collision. Therefore, under Iowa law, plaintiffs were not entitled to the benefit of the "no eyewitness rule" and its presumption of due care. The case of Rickabaugh v. Wabash R. Co., 242 Iowa 746, 44 N.W.2d 659 (1950), on very similar evidence, held that the "no eyewitness rule" had no application. See also, Chicago, R. I. & P. R. Co. v. Lovejoy, supra. The controlling Iowa law on this point is clear and should have been followed by the District Court.
 
 
 11
 Plaintiffs assert that the witnesses were not able to observe deceased, himself, only the truck he was driving, and thus they contend that "no eyewitness rule" should be applied. This very argument was carefully considered and laid to rest by the Iowa court in the Rickabaugh case, supra. Observation of the vehicle is sufficient.
 
 
 12
 Plaintiffs also point out that there are a few details to which the witnesses were unable to testify. This argument, however, is not determinative. In order to qualify as an "eyewitness" the witness need only be able to testify as to the movements of the vehicle at the "material" moments preceding the accident. He need not be able to relate every minute incident or every question put to him on cross-examination in order to qualify. It would be a rare witness that could. It appears to us that the movements of the truck were adequately described by the two witnesses and their testimony prohibits the application of the "no eyewitness rule." It is, therefore, our opinion that it was error to submit this question to the jury. In the absence of this presumption and of any evidence to support plaintiffs' burden of proving due care, a directed verdict on this issue should have been awarded to defendant.
 
 
 13
 Even were we to assume that the "no eyewitness rule" had application in this case, Iowa law clearly holds that, "The inference arising from the no eyewitness rule may be negatived by facts and circumstances shown * * *." Lingle v. Minneapolis & St. Louis Railway Company, 251 Iowa 1183, 104 N.W.2d 467 (1960), and cases cited therein. The law which we are bound to apply provides that even if the plaintiff has the benefit of the "no eyewitness rule," if the "physical facts, evidence, and surrounding circumstances shows that due care could not have been exercised," the plaintiff is not entitled to take this issue to the jury. Hittle v. Jones, 217 Iowa 598, 250 N.W. 689 (1933); Lingle v. Minneapolis & St. Louis Railway Company, supra. From our reading of the record, the deceased could not possibly have been exercising due care for his own safety when he drove into the path of the approaching train.
 
 
 14
 In the first place, deceased was undoubtedly well aware of the tracks. While driving westward along Highway 20, the tracks were in plain view, only about 50 feet to the north. When he reached the underpass, he was prevented from continuing his journey due to the low clearance caused by the tracks crossing the main highway. These tracks were specifically pointed out to Karol by Officer Elliot who instructed him to follow the tracks eastward from the underpass. In attempting to follow the instructions, deceased drove east along Highway 20 and the connecting dirt road. For more than a mile, he drove parallel to these tracks which were 50 feet away and in plain view. Karol turned onto the gravel road that crossed the tracks and stopped less than ten feet from the crossing. From this, we may assume that Karol was actually watching the tracks as instructed and looking for an appropriate crossing. The tracks in front of deceased were raised slightly from the level of the road. There were no buildings, weeds, or other obstructions to obscure their presence. The day was clear and bright. On the north side of the tracks was a cross-tree sign that commonly marks the location of a railroad track. The position of the tracks was foretold by the customary line of telegraph poles. The only reasonable conclusion that can be drawn is that Karol must have been well aware of the presence of the tracks and the location of the crossing. From this evidence, no other conclusion is feasible.
 
 
 15
 Having established that Karol had knowledge of the railroad tracks, the law of Iowa is clear as to his duty. "We have iterated and reiterated the doctrine that a railway track is always a place of danger, and that it is the duty of one about to cross it, * * * to use his senses in order to avoid injury." Hinken v. Iowa Cent. Ry. Co., 97 Iowa 603, 66 N.W. 882, 883 (1896); Van Patten v. Chicago, Rock Island and Pacific R. Co., 251 Iowa 1221, 102 N.W.2d 898 (1960). "The duty is placed on the driver of an automobile to look and listen for trains". Darden v. Chicago, Northwestern R. Co., 213 Iowa 583, 239 N.W. 531, 533 (1931); Chicago, B. & Q. R. Co. v. Ruan Transp. Corporation, 171 F.2d 781 (8 Cir. 1948).
 
 
 16
 The uncontradicted evidence in this case indicates that the track is on the same level or slightly above the roadway and stretches westward in a straight, unobstructed line. A motorist approaching the intersection would have a relatively clear view of an approaching train for over a mile. The day was clear and there were no obstructions to prohibit the deceased from seeing the train had he looked. The train turned on its bell some seven miles from the scene of the accident and it was not turned off until after the accident. The multitoned air horns on the train were first sounded west of the whistle post which is about 1,000 feet west of the crossing. The horns were sounded a second time at the post and were sounded continuously until the collision. Had Karol discharged his legal duty to look and listen, he could have easily seen and heard the approaching train. "A motorist approaching a railroad crossing will not be heard to say that he looked and did not see what he must have seen had he looked." Chicago, B. & Q. R. Co. v. Ruan Transp. Corporation, 171 F.2d 781, 785 (8 Cir. 1948).
 
 
 17
 We believe as a matter of law Karol did not exercise due care for his own safety. Having knowledge of the tracks, he had a duty to look and listen for approaching trains before crossing the tracks. Had he properly discharged this duty, he would have no doubt observed the approaching train sounding its horn and bell. Nonetheless, he was struck by the train. The only conclusion possible is that Karol breached his duty to properly look and listen. For the above reasons, defendant was entitled to a directed verdict on these allegations of negligence. Their submission to the jury constituted error.
 
 II.
 
 18
 Count 1 of plaintiffs' complaint alleges defendant's violation of § 478.1 of the Code of Iowa, which provides:
 
 
 19
 "Every corporation constructing or operating a railway shall * * * construct at all points where such railway crosses any public road good, sufficient, and safe crossings * * * and erect at such points, * * * a sign with large and distinct letters placed thereon, to give notice of the proximity of the railway, and warn persons of the necessity of looking out for trains. Any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such refusal or neglect, and it shall only be necessary, in order to recover, for the injured party to prove such neglect or refusal."[2]
 
 
 20
 Plaintiffs point out that at the crossing in question there was only one sign, the common cross-tree type. This sign was on the north side of the tracks and on the west side of the road. There was no printing on the south side of the sign, so that the traveler proceeding north, as was Karol, would not see the printed notice. It is our belief that this sign probably did not comply with the requirements of the statute. In requiring "large and distinct letters placed thereon * * * to warn persons of the necessity of looking out for trains" the statute no doubt demanded that the "large and distinct letters" be visible from whatever direction travelers might approach. See Dean v. Southern Railway Co., 327 F.2d 757 (6 Cir. 1964). Defendant's sign did not comply with the clear requirements of the statute, even though the cross-buck was visible from both directions. Nonetheless, we do not feel that plaintiffs are entitled to recover under this count.
 
 
 21
 Before plaintiffs are entitled to recover, the statute itself demands that the injury be caused "by reason of such refusal or neglect." Plaintiffs must show not only that the statute was violated but that the failure to erect a proper sign was the proximate cause of the injury. Wright v. Chicago, R. I. & P. Co., 222 Iowa 583, 268 N.W. 915 (1936). We recognize that in many cases it is a jury question whether a proper sign would have prevented the injured traveler from colliding with the train. However, we also recognize that the sole purpose of the statute is to warn unwary travelers of the position of the railroad so that they might take proper precautions. Therefore, the purposes of the statute have been met if the traveler has personal knowledge of the position of the railroad crossing. It is an elementary proposition that no warning is necessary when the person has actual knowledge of the condition. O'Neill v. Minneapolis St. Ry. Co., 213 Minn. 514, 7 N.W.2d 665 (1942).
 
 
 22
 From the facts and circumstances of this case, as we have previously pointed out, no other conclusion is possible but that Karol should have been aware of the presence of the tracks at the time he proceeded to cross them. Since Karol must have been aware of the tracks at the time of the accident, we do not feel that a failure to properly letter the sign or to place another sign facing south was in any way the proximate cause of the accident. A proper sign would give Karol no more information than he already possessed. Therefore, we feel it was error to submit this issue to the jury. Only one conclusion can be reached from these facts. Defendant was entitled to a directed verdict on this count.
 
 
 23
 This tragic accident engenders a great deal of sympathy for plaintiffs, but to recover, plaintiffs must demonstrate some legal basis for their recovery under the law of Iowa. The fault concept of Iowa's negligence laws point only in one direction — to the unfortunate Karol.
 
 
 24
 Having thus disposed of this case, with the exception of the railroad's counterclaim for damages to its train, the balance of appellant's allegations of error, as well as appellees' cross-appeal for interest, are rendered moot.
 
 
 25
 In regard to the railroad's counterclaim, the burden of proving the negligence of the deceased is, of course, upon the railroad. Likewise, the burden of proving its freedom from contributory negligence is upon the railroad. On the counterclaim for affirmative relief, the jury found against the railroad. However, we have no way to determine the basis of their finding. It may have been based upon a belief that Karol was free from negligence. If it was, what influence that erroneous submission of the "no eyewitness rule" and the accompanying presumption of due care had on this finding, we can only speculate. Due to the dearth of evidence on behalf of the plaintiffs, this submission may have had substantial influence. Or, the jury might have found that the railroad's failure to erect a proper sign was the proximate cause of the accident, and on this erroneous basis denied affirmative recovery to defendant. With these incorrect submissions before the jury, we have no way of accurately determining to what extent they influenced the decision on the issue of the railroad's counterclaim. Therefore, this case must be remanded solely for a re-determination of Arco Auto Carriers' liability to the Illinois Central Railroad on the latter's counterclaim for affirmative relief.
 
 
 26
 Therefore, it is our decision that the failure to grant defendant's motion for directed verdict on plaintiffs' two-count complaint was error. This action by the trial court is reversed, with directions to enter judgment thereon in favor of appellant. Appellant's counterclaim for affirmative relief is remanded for re-trial.
 
 
 27
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 This rule has since been amended. Chapter 430, Laws, 61st General Assembly, pp. 810-811 (July 4, 1965)
 
 
 [2]
 Unlike normal allegations of negligence, a complaint alleging violation of this statute is not required to plead freedom from contributory negligence. Contributory negligence must be pleaded and proven by the defendant as an affirmative defense. Payne v. Chicago R. I. & P. Ry. Co., 44 Iowa 236 (1876)