HANS KUEHL, Appellee, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Railroads:** NEGLIGENCE: PROXIMATE CAUSE. Whether the negligent
1   failure of a railway company to sound the engine whistle as the

train approached a public crossing was the proximate cause of the injury to cattle being driven over the crossing, was a question of fact for the jury.

**Contributory negligence:** EVIDENCE. In an action for injury to cattle at a public railway crossing, the evidence as to plaintiff's contributory negligence is held to present a question of fact for the jury.

**Special interrogatories.** Inaccurate answers to special interrogatories not calling for ultimate facts, nor for facts of such importance that a finding thereon against the weight of the testimony is necessarily indicative of passion, do not constitute ground for setting aside the general verdict.

*Appeal from Monona District Court.*— HON. JOHN F. OLIVER, Judge.

TUESDAY, FEBRUARY 14, 1905.

ACTION at law to recover damages for injury to live stock. Verdict and judgment for plaintiff, and the defendant appeals.— *Affirmed.*

*Shull & Farnsworth,* for appellant.

*Will E. Johnston* and *Geo. H. Clark,* for appellee.

WEAVER, J.— The accident complained of occurred upon a crossing of the defendant's railroad and public highway. The highway at this point extends east and west. From the crossing westward the highway has an upward slope to the top of a hill eight hundred feet distant. Extending northward from the crossing the railroad curves to the west, and disappears around the point of a hill at a distance variously estimated at six hundred to nine hundred feet. On the day in question the plaintiff, with the assistance of three other persons, was driving a herd of one hundred and sixty yearling and two year old steers from the west along the public road above mentioned. For convenience in handling, the herd was separated into three " bunches," each in charge of a

man on horseback, while the plaintiff and another person rode in a buggy behind the last bunch. The plaintiff's testimony tends to show that the several bunches were moving in somewhat close order, and that when the head of the herd reached the crossing plaintiff and his companion had arrived at the top of the hill. It also tends to show that as the first of the cattle approached the crossing the man in charge at that point looked and listened to ascertain if any train was coming, and, discovering none, rode on ahead of the herd to the railway track, where he stopped, and again looked and listened. Satisfying himself that no train was near, he then rode back toward the rear of his section of the herd, which began moving across the track, and almost immediately a passenger train, moving from the north, reached the crossing, and struck and killed eight steers. It is the claim of plaintiff and his witnesses that the defendant's engineer failed to sound the whistle or ring the engine bell, as required by law, in approaching the crossing, and upon this alleged omission the charge of negligence is grounded.

I. For a reversal of the judgment below the appellant relies upon the proposition that the evidence does not sustain the finding of the jury. It is not denied that there was testimony from which the jury might properly have found that defendant was negligent in respect to the crossing signals, but it is said there is nothing to show that this negligence was the proximate cause of the accident. If absolute demonstration that the failure to give a signal is the direct cause of a crossing accident is to be required, no verdict could ever be had against a railway company in an action of this nature. No one can tell what might have been the result had the signal been duly given. The person approaching the crossing might not have heard it. Had he heard it, he might not have heeded it. A thousand other contingencies may be imagined casting some degree of doubt upon the conclusion that the signal, if given, would have prevented the collision. But,

1. NEGLIGENCE: proximate cause.

taking the ordinary experience of mankind, there is room for a reasonable presumption that a signal at a distance of sixty rods or more gives time for persons at or near the crossing to avoid danger, and that persons of ordinary prudence, hearing the warning, will take the necessary precaution to insure their safety.   It is not the rule that men willfully or knowingly expose themselves to death, or their property to certain destruction.   On the contrary, love of life and self-interest lead the average man to exercise prudence in the presence of peril.   Had the warning been given, the collision with plaintiff's cattle may not have been avoided, yet the jury may very reasonably and properly have believed that plaintiff or some of his assistants would have improved the opportunity thus afforded to clear the crossing and prevent the injury.

Again, it is said that the evidence shows beyond controversy that plaintiff was guilty of contributory negligence. Appellant states correctly the oft-approved rule that ordinary

2. CONTRIBUTORY NEGLIGENCE: evidence.

care requires a person approaching a railway crossing to look and listen for trains, and, if there is one in plain sight or hearing, so circumstanced as to suggest reasonable probability of danger, he cannot enter upon the track without negligence which will defeat his recovery of damages for injury thus received.   But this statement of circumstances is not so clearly or indisputably shown here in the case at bar that we can say as a matter of law that plaintiff was guilty of such negligence.   On the contrary, the testimony is that the man with the leading section of the herd did both look and listen, and took the precaution to ride ahead of the steers in order to look up the track from the crossing itself. We are not authorized to say he does not tell the truth when he says he did thus act, and that no train was in sight.   The longest distance at which appellant claims the train could be seen from the crossing is nine hundred and thirty-eight feet, a space which would be compassed by a fast train in a very few seconds.   The witness, after looking from the crossing,

and finding the track apparently clear, turned back to his cattle for the purpose of taking them over the track. The performance of this duty would naturally engage, or at least divide, his attention for a brief period, in which the train may have had time to round the point of the hill, and, in the absence of proper warning, bring about the collision without negligence on his part. Under such circumstances it became a fair question whether the plaintiff or his driver with the advanced section of the herd exercised reasonable care for the safety of their cattle.

II. The court, on its own motion, submitted to the jury two special interrogatories, as follows: "(1) Was there anything to obstruct the view of the track or approaching train between the highway along which the

3. SPECIAL IN-
TERROGA-
TORIES.

cattle were driven at any point within one hundred and fifty feet from the crossing to the point of the hill north of the highway, and around which the railway track ran? (2) Could the train have been seen from a point in the highway on which the cattle were being driven anywhere from twenty feet to one hundred and fifty feet from the crossing, as soon as it turned the point of the hill to the north of the crossing?" The first interrogatory was answered in the affirmative, and the second in the negative. It is said these answers are so clearly without support in the evidence that the general verdict should have been set aside. Such is not our view. In the first place, the situation to which these inquiries were directed was the matter of considerable dispute and uncertainty in the evidence, and while we think the weight of the testimony tended to support the appellant's theory as to the distance a train could be seen from the crossing, it is not so clear concerning the view from points west of the crossing that we can say the findings are clearly without support. However this may be, the interrogatories do not call for ultimate or controlling facts, nor for facts of such importance that a finding thereon against the weight of the testimony is necessarily indicative of passion or preju-

dice.    For a case very like the one at bar in respect to special interrogatories, see *Pence v. Railroad,* 79 Iowa, 389, where it was held that an inaccurate answer afforded no ground for setting aside the general verdict.

This appeal presents little for consideration save the ever-recurring question whether the evidence supports the verdict of the jury.    Having concluded, from an examination of the record, that we cannot properly disturb the verdict on this ground, there is no occasion for a review of the authorities to which counsel on either side have called our attention.

The judgment of the district court is *affirmed.*