ELLA MAE SMITH, by her next friend, CLARENCE SMITH, Plaintiff, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Defendant, Appellee.

No. 45079.

E. E. Hairgrove, Homer I. Smith, and Miller & Claussen, for appellant.

Frank W. Ellis, A. P. Barker, and Clark, Pryor, Hale & Plock, for appellee.

MITCHELL, J.—This case comes before us on the pleadings. A demurrer having been sustained to the petition. Plaintiff has appealed.

The pertinent part of the petition is as follows:

"5. That said highway number 80 runs due north and south in the vicinity of said crossing; that the defendant's track crosses said highway in a northwesterly and southeasterly direction; that defendant's car was headed in a northwesterly direction; that when the defendant's motor car was close to the highway or upon any part of said highway the beam of its headlight was directed away from plaintiff as she approached said crossing; that said headlight was so constructed that its rays of light were projected forward and so that said headlight was invisible to plaintiff and said Housenga as they approached said crossing; that whatever light may have been reflected by particles of dust or vapor in the air in the beam of the headlight was not discernible to plaintiff or said Housenga against the illumination of the oil station above referred to; that the forward compartment of said car contained the motors

for generating power to operate such car and the operating quarters for its operator and took in the forward one fourth of said car; that except for very faint lights over the operating controls of said car no lights were visible from the outside in such forward part of the defendant's car; that no lights farther to the rear on the defendant's car were visible to plaintiff or to said Housenga until the front end of said car was on the paved portion of the highway; that the defendant's car was not apparent or discernible to plaintiff or said Housenga until the front end of said car was driven over the east edge of such pavement.

"6. That all of the facts and circumstances surrounding said crossing hereinbefore alleged which rendered said track and motor car indiscernible when approached from the south, as hereinbefore alleged, had been in existence for a long time prior to said collision and were well known to defendant and its employees, or would have been ascertained by the defendant and its employees by the exercise of reasonable care and diligence.

"7. That the defendant and its employees had knowledge that by reason of the facts hereinbefore set forth it was impossible for travelers approaching said crossing from the south in automobiles to timely learn of the presence of trains or cars on defendant's track east of said highway, and caused such trains and cars to be stopped east of said highway in order that said highway might be reconnoitered by its employees before proceeding upon said highway while one of the train crew opened the gate at the railroad crossing; that the employees of the defendant in charge of the operation of its said car brought it to a stop near the easterly line of said public highway, at such a place that its presence was concealed from said Housenga and from plaintiff by the trees, shrubbery and brush on defendant's right of way; that the defendant's car remained stationary for several minutes while one of the train crew went across the highway for the purpose of opening the crossing gate; that without any warning being given by bell or whistle the defendant's car was driven onto the highway very slowly and at such a rate of speed that it could have been stopped prac-

tically instantly by the application of its brakes; that the defendant's employee in charge of the operation of said car knew that no audible signal had been given of the presence of said car at said crossing and knew, or in the exercise of reasonable care should have known, that said car was not discernible to said Housenga or to plaintiff until it had been driven so far that the front part of it was on the pavement; that said highway number 80 was straight and level for a distance of 2000 . feet south of defendant's tracks; that said employee was stationed in the darkened compartment at the front end of said car, and, before said car was driven onto the pavement on said highway, saw, or in the exercise of reasonable care could have seen, the said Housenga's automobile approaching the said crossing and knew, or in the exercise of reasonable care should have known, that the presence of the defendant's car was unknown to the driver and occupants of said automobile, and knew that if said car was driven upon said pavement said automobile could not be stopped before colliding with said car; that said employee failed to apply the brakes of said car and bring it to a stop but drove said car into the pathway of said automobile on the pavement.

''8. That plaintiff was at all times immediately prior to and at the time of such collision in the exercise of due care and caution and that said collision and injuries were not caused by any want of care or negligence on the part of plaintiff.

''9. That such collision and injuries were caused by the negligence of defendant in this:

'' (a) That without giving any warning of the presence of the defendant's car, or of their intention to operate said car, over said highway, the defendant's employees drove said car onto said highway and into the path of the automobile in which plaintiff was riding when such automobile was approaching so close to the defendant's tracks that the driver of such automobile could not stop it before colliding with defendant's car and when said automobile was so close to defendant's car and the danger of collision in time to enable the driver of the auto-

mobile to stop the automobile before colliding with defendant's car.

"(b) That the employees of the defendant in charge of said motor car failed to look along the said highway to the south to ascertain whether said motor car could be driven onto the highway with reasonable safety before starting said car and driving it onto the highway."

It is alleged that the plaintiff was not familiar with the crossing and did not know of the presence of the railway motor. That as a direct result of such collision plaintiff sustained injuries which are described.

Defendant railroad company filed the following demurrer:

"1. That the said petition does not state facts sufficient to entitle the plaintiff to the relief demanded for the reason that the said plaintiff's petition does not state a cause of action, in that no actionable ground of negligence is pleaded.

"2. It is apparent on the face of the said plaintiff's petition that if plaintiff sustained the alleged injuries in the manner claimed from the facts alleged the presence of the train moving over the crossing was not the proximate cause of- such injuries by reason of the driving of the automobile into the side of the train.

"3. That said plaintiff's petition wholly fails to allege the failure of any duty imposed by law upon the defendant with respect to the protection of the plaintiff from injury or that the failure of the defendant to perform any such duty resulted in the plaintiff's injury.

"4. That under the law the presence of the train on the track in question was adequate notice and warning to the plaintiff that the crossing was occupied and that no additional signs, signals or warnings on the part of the railroad company were required.

"5. That if the train was moving on the crossing as alleged that this would only be a condition and not the proximate cause of alleged injuries or of running into the train and is no basis for the relief demanded."

The error alleged has to do with the sustaining of the de-

murrer. The petition is in four counts. We will first consider count No. 1.

It is alleged in the petition that at about 9 p. m. on July 9, 1938, the appellant was riding as a guest in the automobile operated by one Louis Housenga. It was being driven in a northerly direction on paved highway number 80. That the highway crossed the railroad tracks of the appellee. That the appellant was not familiar with the highway or with the location of the railroad tracks. The part of the petition set out shows the facts and circumstances surrounding the crossing, showing that the crossing was indiscernible to the appellant and the driver of the automobile. That the railway motor was standing still, but hidden by the shrubbery from the view of one approaching on the highway. That the railroad motor without sounding any warning proceeded slowly across the intersection, and that the automobile in which appellant was riding collided with the front wheels of the railroad motor.

It is conceded that any fact well pleaded in the petition for the purpose of the demurrer is assumed to be true.

The appellee relies to a great extent upon the recent opinion of this court in the case of Dolan v. Bremner, 220 Iowa 1143, 263 N. W. 798. We have no fault to find with that opinion. But the facts in that case and the case at bar are entirely different. In the Dolan case the train was on the crossing, and this court held that the presence of the car or train upon the crossing is sufficient warning, and that no other signals of the car or train need be given.

Under the pleaded facts in this case, we are confronted with a situation, where the railroad motor was standing still, obscured from view at the side of the crossing. It was not upon the crossing as the automobile approached. It gave no warning that it was about to cross the intersection. The automobile collided with the front end of the motor car. The automobile turned slightly to the left. Whether the motor car or the automobile reached the intersection first is a question, at least under the facts pleaded, it was only the matter of a second or two, perhaps a split second as to which one reached the crossing first. Can we say under such circumstances that the presence of the railroad motor upon the crossing was sufficient

warning that the crossing was occupied? There must not only be a warning, but it must be timely.

In the case of Dombrenos v. C. R. I. & P. R. Co., 194 Iowa 1161, 1166, 174 N. W. 596, 191 N. W. 158, 160, this court cites with approval the following quotation from the supreme court of the United States in the case of Continental Imp. Co. v. Stead, 95 U. S. 161, 164, 24 L. Ed. 403:

" 'But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass. * * * Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing.' "

In Carrigan v. Minneapolis & St. L. R. Co., 171 Iowa 723, 737, 151 N. W. 1091, 1095, it is said:

"The discovery of the fright of the horse and the danger imminent therefrom undoubtedly cast upon the trainmen the duty to avoid the threatened injury to the plaintiff so far as it lay within their power. Due care in such a case would be such a high degree of care as to be commensurate with the threatened injury. * * *

"On the question of negligence at this point, it is not very material whether we deem it as pertaining to the 'last clear chance' doctrine or whether we deem it as independent and original negligence. If the trainmen failed at this point to exercise the degree of care incumbent upon them to avoid the threatened injury to the plaintiff, the defendant would be liable on either theory, because such negligence would become the proximate cause of the injury. The duty of the trainmen would be predicated, of course, in a large measure upon the helplessness on the part of the decedent to save herself."

In the case of Hanrahan v. Sprague, 220 Iowa 867, 869, 263 N. W. 514, 515, an engine in the city of Fort Dodge standing with two cabooses attached, near the north line of the street was suddenly and without warning started, and the cabooses collided with the front end of the truck, this court speaking through Justice Richards said:

"There was evidence from which the jury could have found that plaintiff was within his rights in attempting to cross the

tracks in front of the standing engine and cars, and that no signal of movement had been given, and that as plaintiff was about to cross the track the engine and cars were suddenly moved backwards, into plaintiff's truck, without warning or ringing of the bell.''

In the Hanrahan case, the plaintiff saw the train. Yet the court says that there was evidence from which the plaintiff was within his rights in attempting to pass over the crossing notwithstanding the presence of the train. In this case the railroad motor according to the pleaded facts was standing still, obscured from view by the shrubbery, and clearly in accordance with the rule in the Hanrahan case, the automobile was within its rights in attempting to pass over the crossing.

Appellee says no actionable grounds of negligence is pleaded. It was the duty of the operator of the railroad motor to maintain a lookout and to exercise reasonable care to avoid causing injury to appellant. It is pleaded that the railroad motor was driven into the course of the oncoming automobile without any warning, and that it could have been stopped by applying the brakes. This is a failure to perform a duty and actionable negligence. The proximate cause of the injury was not the presence of the railroad motor on the crossing, but the manner in which the railroad motor was driven onto the crossing is the proximate negligence. The lower court was in error in sustaining the demurrer to count No. 1.

The material aspect in which count No. 2 of the petition differs from count No. 1 is that count No. 2 is framed on the theory that the railroad motor was not brought to a complete stop before being driven onto the highway.

Paragraph 7 of the first count, relating to the stopping of the railroad motor is omitted from count No. 2. The allegations of paragraph 2 of count No. 2 are substituted for paragraph 9 of count No. 1 and are the allegations of negligence relied on, they are as follows:

''(a) A violation of the law of Illinois requiring railroad companies to remove brush and trees from its right of way at grade crossings for a distance of 500 feet in each direction from the crossing.

''(b) The violation of the law of Illinois requiring that the bell and whistle be rung or whistled at a distance of 80

rods from the crossing, and be rung or whistled until the highway is reached.

"(c) . Appellant further alleges that the defendant's employees drove the car from behind the obscuring trees and brush onto the highway and into the course of the automobile without giving any warning, whatever of the railroad motor, when the automobile was so close to the track that it could not be stopped before colliding with the railroad motor."

Here again we find from the pleaded facts that the railroad motor failed to give a warning as required, and from its concealed position came out into the highway, at a time when the automobile was so close that it could not be stopped. The failure of compliance with a statutory standard of care is negligence. It is alleged that the law of Illinois, and this collision occurred in Illinois, required that the bell be rung and the whistle sounded, and that this was not done.

In regard to the question of proximate cause, we quote from a very able opinion by the late Justice Weaver, in Kuehl v. Railway Co., 126 Iowa 638, 640, 102 N. W. 512, 513, wherein this court said:

"If absolute demonstration that the failure to give a signal is the direct cause of a crossing accident is to be required, no verdict could ever be had against a railway company in an action of this nature. No one can tell what might have been the result had the signal been duly given. The person approaching the crossing might not have heard it. . Had he heard it, he might not have heeded it. A thousand other contingencies may be imagined casting some degree of doubt upon the conclusion, that the signal, if given, would have prevented the collision. But, taking the ordinary experience of mankind, there is room for a reasonable presumption that a signal at a distance of sixty rods or more gives time for persons at or near the crossing to avoid danger, and that persons of ordinary prudence, hearing the warning will take the necessary precaution to insure their safety."

The lower court erred in sustaining the demurrer to count No. 2 of the petition.

Counts Nos. 3 and 4 are based upon recklessness, rather than mere negligence on the part of the employees of the appel-

lee. The allegations of counts Nos. 1 and 2 in regard to freedom from contributory negligence are omitted from counts Nos. 3 and 4.

There are no facts pleaded, that charge recklessness. Counts Nos. 3 and 4 are based upon the same set of facts alleged in counts Nos. 1 and 2, and as the pleader failed to set forth facts upon which recklessness could be found, the demurrer as to counts Nos. 3 and 4 was properly sustained.

It therefore follows that this cause is reversed as to counts Nos. 1 and 2 and affirmed as to counts Nos. 3 and 4.—Reversed in part; affirmed in part.

HAMILTON, C. J., and MILLER, SAGER, STIGER, and OLIVER, JJ., concur.