A. F. BURNETT, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

**RAILROADS:** Accident at Crossing—Bell and Whistle Signals—Posi-
1  tive and Negative Testimony. Positive testimony that the statu-
tory bell and whistle signals were given at a railway crossing, met
by testimony that such signals were not heard by those *in a posi-
tion and mental attitude to have heard them, had they been given,*
presents a conflict of evidence and consequent jury question.

**RAILROADS:** Accident at Crossing—"Stop, Look and Listen" Rule.
2  The court has no right to say that one about to go upon a rail-
way crossing must, in all cases and as a matter of law, observe
any particular act of caution. Therefore, where a headlight,
claimed to be quite dim, was observable for a distance of over a
mile, and plaintiff saw it as he was about to go upon the crossing,
but, in the darkness, misjudged its nearness, it was proper to re-
fuse instructions that plaintiff would be guilty of negligence if he
was unable, by reason of the darkness, to determine the nearness
and speed of the train and *did not stop, look, listen or wait.*

PRINCIPLE APPLIED: See No. 3.

**RAILROADS:** Accident at Crossing—Crossing in front of Approach-
3  ing Train—Contributory Negligence. A traveler may rightfully
go upon a railway crossing in front of an approaching train, if
the distance be such that, as a reasonably prudent man, he may
fairly expect to cross in safety. To transfer the question of his
negligence from the jury to the court, the facts and circumstances
showing negligence must be of a very decisive character.

PRINCIPLE APPLIED: On a very dark winter morning, with
roads frozen but fairly smooth, plaintiff, immediately following
another team, slowly approached, without great noise, a familiar
railway crossing, and, when 20 rods therefrom, pulled down the
collar of his coat, exposing his eyes and ears, and looked both
ways, and listened and continued to listen for a train. His eye-
sight was good. Hearing no train, he drove within 20 or 30 feet
of the track, and then saw a dim oil headlight on an engine which
he judged was a half mile away. He heard no bell, whistle or

sound of running train. Judging he had ample time to clear the track, he drove on. No light reflected on the rails or team ahead. *Had he stopped and waited, he could have discovered where the train was.* The man ahead heard neither bell nor whistle, nor did he hear the train before he saw the light. He thought the light was 80 rods distant. He barely escaped. A headlight could be seen for over a mile from this crossing and, ordinarily, from a distance of over two blocks, lighted up the crossing. The train consisted of an engine and caboose. The engine crew testified that the bell was rung and whistle sounded. They saw nothing of plaintiff until the crash. *Held,* to present a question of negligence for the jury.

RAILROADS: Accident at Crossing—Headlight in Lieu of Bell and
4   Whistle. The fact that the statutory bell and whistle signals are not given have material bearing on the question of the contributory negligence of one injured at a crossing, even though the injured party saw the headlight on the engine and therefore knew of the presence of the train.

   PRINCIPLE APPLIED: See No. 3.

RAILROADS: Accident at Crossing—Signals—Statutory Duty to Give
5   —Reliance Thereon. A traveler approaching a railway crossing has a right to rely upon the presumption that the railway company will, through its employees, give the statutory signals.

*Appeal from Dallas District Court.*—HON. W. H. FAHEY, Judge.

SATURDAY, NOVEMBER 27, 1915.

THE opinion sufficiently states the case.—*Affirmed.*

*Cook, Hughes, Sutherland & Taylor,* for appellant.

*S. Trevarthen* and *H. G. Giddings,* for appellee.

WEAVER, J.—Main Street in the town of Woodward, extending south, crosses the line of defendant's railway not far from the station grounds. Early in the morning of February 13, 1913, plaintiff and one Arnes, each driving a team and farm wagon, approached the crossing from the north, Arnes being in the immediate lead. It was still very dark, making it difficult for plaintiff to outline the wagon in front. Both drivers were familiar with the crossing and its surroundings and had for several days been engaged in hauling ice

over that road. Plaintiff's evidence is to the effect that, when about 20 rods from the crossing, he pulled down the collar of his overcoat so that it would not obstruct his sight or hearing; and, standing in his wagon, looked and listened for approaching trains, but discovered none. Remaining standing, he drove forward, close behind the leading wagon, and when within about 20 feet of the track, he saw what he described as a dim light of an engine, but he could hear no sound of a moving train and no whistle or bell, and, believing the engine to be half a mile distant, and that there was ample time to cross in safety, he continued his course. He had not cleared the track, however, when he realized that the engine was upon him and sprang forward, but too late to entirely avoid the collision. The wagon was wrecked, one of the horses killed, and the other injured to some extent, the harness broken, and plaintiff himself sustained painful bruises. He brings this action at law to recover damages for the loss and injury so sustained, alleging that they were caused by the negligence of the defendant and without fault on his part. There was a verdict and judgment in his favor for $700, and defendant appeals.

While the appellant has assigned numerous errors, the questions so presented all turn upon one of two propositions: first, that there is no evidence on which a finding of negligence on the part of appellant can be sustained; and second, that, in any event, plaintiff has shown himself chargeable with contributory negligence as a matter of law. To these propositions we will give our attention.

I. The only charge of negligence which the court submitted to the jury is that defendant's employees in charge of the train failed to sound the statutory crossing signals or otherwise give warning of its near approach. The testimony in this regard presents the same conflict which is frequently, if not generally, found in this class of cases. The evidence given by both plaintiff and Arnes is something more than the mere negative statement that they

1. RAILROADS: accident at crossing: bell and whistle signals: positive and negative testimony.

did not hear the signals. They were in a position where they could have heard them if given, and both swear that they gave attention and listened, and heard no sound of them. True, defendant's employees testify that the signals were given; but we have often held that such a record makes the truth of the controversy a question for the jury. *Mackerall v. Omaha & St. L. R. Co.*, 111 Iowa 547; *Morgan v. Iowa C. R. Co.*, 151 Iowa 212; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142, 147.

Whether plaintiff is chargeable with contributory negligence is a somewhat closer proposition; yet, when the evidence is scrutinized, it presents no serious difficulty. The appellant's theory of the law, as applicable to this case, is embodied in several requests for instructions to the jury. Though stated in varying forms, they all present the same essential thought contained in the following, which we quote from the abstract:

2. RAILROADS: accident at crossing: "stop, look and listen" rule.

"1. The plaintiff seeks to excuse himself for going upon the crossing in front of the train, on the ground that he was misled as to the distance the train was from the crossing by reason of the character of the light on the engine; and as regards this part of the plaintiff's claims, you are instructed that, when the plaintiff saw the light on the engine and knew that a train was on the track and coming in the direction of the crossing, he was bound to use ordinary care to ascertain the distance the train was from the crossing and *if he could not discover how far the train was from the crossing except by stopping to look and make such investigation, then he was required to stop and was negligent in failing to do so.*

"2. The plaintiff has testified that, when he was approaching the railway crossing and some distance therefrom, he saw the headlight of the train and knew that it was coming toward the crossing; and, as regards this part of the case, you are instructed that, when the plaintiff saw the headlight

and knew of the presence of a train upon the track, he was bound to exercise ordinary care to discover whether or not he could pass over the crossing in safety, *and if he could not discover where the train was,* or *how near the crossing it was without stopping and looking and listening, then he was negligent in failing to stop for that purpose and your verdict should be for defendant.*

"3. The plaintiff was bound to use ordinary care for his own safety; and *if, when he saw the headlight on the train, he was not able to tell how far the train was away from the crossing,* or *how fast the train was running, then he would have no right to assume that he could make the crossing in safety and he was negligent in attempting to do so, and did not exercise ordinary care in continuing to drive toward and upon the crossing.*"

The vice of these requested instructions which justifies their refusal is in the reiterated statement which we have italicized, that if, because of the distance or the darkness or for any other reason, plaintiff could not otherwise discover how far the train was from the crossing, or where it in fact was, or the speed at which it was moving, it was then his duty, as a matter of law, to stop, look and listen, or to wait until the train had passed before venturing upon the crossing. The testimony shows that an ordinary headlight is visible from the crossing a distance of one or two miles, and to approve the proposed instructions would be to say that a traveler upon the highway, in the darkness of the night, having discovered the headlight of a train, is bound at his peril to "discover" or "be able to tell" the location or direction of the train and the speed of its approach; and if he fails to do so, he is guilty of negligence unless he stops, looks and listens, no matter what other precautions he may take to ascertain the imminence of the danger. The rule of "stop, look and listen", as a matter of law, has been expressly denied by this court on many occasions (*Williams v. Chicago, M. & St. P. R. Co.,* 139

Iowa 552, 554; *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1). Speaking upon this subject in the last cited case we said:

"It is not within the province of the court to say, as a matter of law, that a person about to cross a railway track is bound to stop, look and listen for approaching trains. The limit to which the court may go in that direction is to say that if the circumstances surrounding the attempt to cross the track are such that, in the exercise of reasonable care, the traveler ought to stop or ought to look or listen at some particular point of the approach, then the failure to do so will be negligence. In other words, the rule is not that the traveler must as a matter of law and at all crossings observe any one particular act of caution, but rather that he shall observe all the cautions required by reasonable and ordinary regard for his own safety."

And this is, in substance, what the trial court upon its own motion said to the jury. Further than that, it could not properly go. It is, of course, conceivable that circumstances may arise, and in fact do arise, where the attempt to cross a railway track in front of a moving train is so clearly reckless and careless that the court will not permit a jury to say that the injured person was not negligent.

The sole question remaining, then, is whether the evidence makes a case on which plaintiff was entitled to the finding of the jury. The evidence in his behalf is, as we have already noted, that, when within about 20 rods of the crossing, he arranged the clothing about his neck and face to permit him to see and hear; that his cap was not drawn over his ears; and that, standing in his wagon and looking up and down the track, he discovered no signs of a train. He says:

3. RAILROADS: accident at crossing: crossing in front of approaching train: contributory negligence.

"I looked and listened. I looked down the track east and west and I saw no train and heard no whistle, and I stood up

there and kept looking and listening along to see if there was any sign of any train and saw none. I was listening for whistle and bell and there was no whistle or bell sounded. As I was in the cut, I saw a dim headlight, that was the first thing I saw. . . . When I first observed the train approaching, I was in the cut and the horses were 20 or 30 feet from the track. The light was the first thing I saw. It seemed to be far away, a half mile away, and I thought I had lots of time and did not hurry my horses. Thought I had plenty of time. No light reflected on the rail and nothing to show ahead of me and I went on like I had been, watching and listening for the whistle and bell. I looked as I started down into the cut. I looked east and tried to look west and ahead. It was too dark to see much. I knew about where the crossing was. I crossed it every morning hauling ice. I was familiar with the road and was looking the best I could to get across there safely. I saw no light on the crossing at all and could not see the crossing at that time. Mr. Arnes and his rig were very close ahead of me and I saw no reflection of light on them.''

In response to questions on cross-examination, he further says:

Q. "And did not endeavor to see how far the train was away?" A. "Only I looked down the track, and it seemed to be a long way off." Q. "You did not stop or see or try to find out how far the train was away, did you?" A. "No, sir, I did not stop." Q. "You just guessed at it, didn't you?" A. "Yes, sir. I had my notion of it." Q. "That was purely a guess on your part as to where the train was?" A. "I just judged by the headlight. It was my guess that it was down there half a mile. There was nothing to hinder me from stopping to see if the train was near or far away. My eyesight was good, and by stopping there, I could have discovered where the train was if I had waited until they got close enough." Q. "Did you think the train was far away when you saw it?" A. "I thought it was down half a mile." Q.

"Did you know whether it was far away or not?" A. "No."
Q. "It was nearer than you thought it was?" A. "Yes, sir,
it was nearer than I thought it was." Q. "And you did not
stop to see how close it was, did you?" A. "No, sir." Q.
"And there was no reason why you could not have stopped,
was there?" A. "No, sir."

Arnes, the driver of the team which immediately pre-
ceded plaintiff at the crossing, testifies that, as he approached
the track, he looked both ways to discover whether any train
was approaching, and at first saw none. He then saw the
light and, believing he had plenty of time, drove ahead; but
before he accomplished the crossing, the train was so nearly
upon him that he barely escaped. He says, "I did not hear
the approach of the train before I saw the light. Before I
saw the light, I had listened. I did not hear any bell ringing
or whistle sounded, or any other alarm." In attempting to
describe the light, he says, "It seemed as though it was a long
way off. . . . It was my judgment that it was 80 rods
away." These witnesses also say that they have, on frequent
occasions, observed engine headlights from this crossing; that
they are visible for a distance of a mile or more; and on other
occasions than the morning in question, the headlight would
illuminate the crossing and be reflected from the rails and
other objects in that vicinity, while still from a block to two
and a half blocks away. The engineer and fireman, testifying
for the defense, concede the darkness of the morning and say
they saw nothing of the plaintiff or his team and knew of the
collision only from hearing the crash. Of the character of
the headlight, they say, "We had an oil headlight—one of the
old style—one that they were using at the time. It was giving
the ordinary light for one of that kind, about as good as those
engines usually are." It is suggested for appellant that the
noise of the moving wagons accounts for the failure of these
witnesses to hear the crossing signals. There is no evidence
that the wagons were making any great noise. The teams
were moving slowly and, while the ground was frozen, Arnes

says the road was smooth, and plaintiff also testifies, "It was not much rough." The train, it should also be said, consisted of an engine and caboose only, and its movement over the rails could hardly have been very noisy. All these attendant circumstances were proper matters to press upon the attention of the jury in the arguments of counsel, but they are not of such decisive character that the court can peremptorily dispose of the issue of fact. Giving all the evidence concerning the collision the most favorable construction it will reasonably bear in plaintiff's favor (and this we are required to do), it cannot be said, as a matter of law, that he did not exercise the care of an ordinarily prudent man for his own safety. It is not true that a traveler may not rightfully venture upon a crossing in front of an approaching train if the distance be such that, as a reasonably prudent man, he may fairly expect to cross in safety before the train arrives. *Adams v. Union Electric Co.*, 138 Iowa 487; *Bruggeman v. Illinois C. R. Co.*, 147 Iowa 187, 206; *Lundien v. Ft. Dodge, D. & S. R. Co.*, 166 Iowa 85. He cannot, of course, indulge in nice calculations whether he may barely escape injury, nor may he take reckless chances and be free from contributory negligence; but if, having first made reasonable use of his senses (including his "common sense"), he may reasonably conclude that the opportunity to pass is ample and safe, he cannot be said to be negligent, even if it proves that he is mistaken. See *Kansas City, L. R. Co. v. Gallagher*, 68 Kan. 424. True, his freedom from the charge of negligence is not sufficient, alone, to sustain a recovery in his favor from the railway company; and to justify such finding, the proximate cause of the injury must be found in some negligence on defendant's part. As we have already held, there is evidence in the record to sustain the jury's finding that the appellant was negligent with respect to the crossing signals. It is argued, however, that, as plaintiff saw the headlight, the very office which those signals were intended to perform was fully accomplished, and the signals became unnecessary; but this is not quite

4. RAILROADS: accident at crossing: headlight in lieu of bell and whistle.

true.  The sounding of the whistle at the proper place not only apprises the traveler at the crossing of the fact that a train is coming, but it is notice to him that, if the engineer is observing the law, such train is at least 60 rods away, less only the distance it has moved while the sound is traveling that interval.  So too, if the bell is rung continuously from the signal post until the crossing is passed, the increasing distinctness of the ringing emphasizes to his sense of hearing the increasing danger.  If neither signal be given, the natural tendency is to lull him into a feeling of security, and satisfy him that a dim headlight seen through the darkness is that of a train which has not yet reached the signal post.  He is not thereby justified in failing to make use of his own senses; and if, notwithstanding the absence of signals, he, as a reasonably prudent man, ought to understand the imminent danger in going ahead, it is his duty to refrain therefrom, and he is not entitled to a verdict.  The one and only warning of the danger to the plaintiff was the headlight coming in the distance.  The darkness was such that he could not locate the place of the train by any other object or note its speed.  The distance could, therefore, be estimated only by the apparent size and brilliancy of the light and by the sound of the signals, if given.  Assuming, then, that no signals were given; that the headlight was dim, appearing to plaintiff and his companion to be from a quarter to a half mile away when they were within a very few feet of the crossing, we are not prepared to say that their act in going forward was one of such character as to impress all impartial minds with a conviction of their want of due care.  Whether one acts with proper care in going upon a crossing depends upon the circumstances as they reasonably appear to his mind, and not simply upon the facts as investigation after the accident may develop them. *Ward v. Marshalltown L. P. & R. Co.,* 132 Iowa 578; *McDivitt v. Des Moines C. R. Co.,* 141 Iowa 689; *Detroit & M. R. Co. v. Van Steinburg,* 17 Mich. 99.

5. RAILROADS: accident at crossing: signals: statutory duty to give: reliance thereon.

In the recent case of *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142, 158, the driver of a team was struck and killed upon a public crossing, at a point where the approaching train could have been seen for a considerable distance. There was evidence, however, that, although night was setting in, no headlight was displayed upon the engine and no crossing signals sounded. We there said that the traveler upon the highway approaching a crossing "has the right to rely upon the railway's operating its trains in accordance with the law and ordinances of the city. If failure to do these things is calculated to mislead a traveler, the company cannot complain of his conduct when acting in reliance upon the performance thereof. He has the right to rely upon a burning headlight, when such headlights should be lighted; on the ringing of the bell, and, in exceptional cases within a town, especially where the crossing is a dangerous one, upon the blowing of the whistle or some other warning; and, if he does so, and at the same time exercises the ordinary precautions of sight and hearing, he cannot be held guilty of contributory negligence as a matter of law. In such circumstances, the question is one of fact for a jury."

The same proposition has been too often affirmed to require further citation of authorities or call for further discussion at this time.

The case seems to have been fairly submitted to the jury and, the verdict having support in the evidence, the judgment below must be—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.