ROBERT FINLEY, Appellee, v. FRANK O. LOWDEN et al., Appellants.

No. 44026.

FEBRUARY 8, 1938.

REHEARING DENIED JUNE 24, 1938.

J. G. Gamble, R. L. Read, A. B. Howland, and Hicklin & Hicklin, for appellants.

John Hale, Arthur Springer, and F. W. Miller, for appellee.

SAGER, J.—This case presents the familiar picture of an ordinary crossing accident, with the usual contradictions in the testimony offered and the usual differences in the conclusions which are sought to be drawn therefrom by the respective parties. Because of the conclusions hereafter announced, we do not deem it necessary to examine the evidence in such detail as might be thought desirable if this were an action brought by the driver of the truck involved in the accident under investigation.

Plaintiff in this action was a guest, riding between the driver

and owner of the truck, Bumgardner, who sat on the left, and Denham on the right.

To one passingly familiar with the decisions on this subject, it is apparent that the rules applicable to a plaintiff in this situation are not the same as those which would control if the driver were himself complaining of injuries sustained. In this case the evidence is such that had Bumgardner been bringing this suit it might be that we could hold that he did not exercise that degree of care demanded of him by law, but we find it unnecessary to draw such a conclusion because, as we view the record, the question of whether negligence existed on the part of the plaintiff was not for the court as a matter of law but for the jury as a matter of fact. The court took the view that it was for the jury and overruled defendants' contentions to the contrary. In so doing we think the lower court was right.

■■■ It will serve no good purpose to make a comparison of the testimony by witnesses on either side, because according to our rule, if the question is one upon which reasonable minds may fairly differ, we are not concerned with whether the result is one which we might have reached had we been triers of the facts. As not uncommonly happens in cases of this kind, the defendants strenuously argue that the testimony of those witnesses who gave evidence with reference to signals is of a negative character and lacks probative value. We have examined the testimony of the witnesses carefully, resorting to the transcript in matters of doubt, and we are satisfied that there was a fair conflict upon the question whether timely and proper signals were or were not given. It might be conceded without changing the result that the testimony offered by the defendants on the question of signals was more direct and positive than that offered by the plaintiff, but this is no reason for our taking the position that the jury, having opportunity of judging and seeing the witnesses on the stand, was not warranted in believing the testimony of plaintiff's witnesses.

■■■ Bumgardner, the driver of the truck, said that he looked north as he approached the crossing, at least twice, and saw no train. He heard the whistle once and that immediately before the crash, and did not hear the bell at any time.

The witness Marsh, an express messenger who was on the depot platform waiting for the train, heard no bell at any time.

Another witness near the scene of the accident heard no whistle or bell until after the accident, when he heard the bell. Utter, the mail messenger at the station waiting for the train, heard the whistle more than once and did not remember hearing the bell.

As the truck approached the crossing, at a short distance therefrom, the plaintiff saw a flash of light against the rails, and almost immediately heard the whistle; and then came the crash.

Another witness testified that she heard the train whistle, but not more than once. Another heard the whistle at a considerable distance from the crossing, but would not say whether more than once.

In this statement we have necessarily taken plaintiff's view as the jury might have found it, and we are satisfied that we are not warranted in saying that the testimony of witnesses so located and so engaged, was of such a negative character that as a matter of law it did not rise to the dignity of evidence having probative force.

This accident happened in the westerly outskirts of the city of Wapello, and the highway and railway near the point of the accident both proceed in a somewhat northwesterly and southeasterly direction, though the railroad track curves somewhat from the northwest, veering to the east and forming a rather acute angle at the point of intersection. This situation put the driver, Bumgardner, in a position where the nearer he approached the crossing the more his vision to see an approaching train tended backward over his left shoulder. The plaintiff, sitting at his right side, naturally had a much more limited vision and could scarcely see the train without leaning forward and looking around and past the driver. The gravel box on the back of the truck obstructed the rear window of the cab so there was no opportunity to see by looking out that way. Plaintiff's testimony would seem to indicate that his observation to the north was rather casual. The train, if it had been on time, would have passed more than an hour before, and this affords the basis of plaintiff's testimony that his attention was more directed to the south, whence a train might come, than to the north.

This brings us to what we regard as the primary, and in fact, the only real question in the case.

■■■ The truck was in good condition and its driver thoroughly experienced and thoroughly familiar with the crossing through many years. The plaintiff was likewise familiar with the crossing, having passed back and forth twice a day for two or three weeks in this same truck. The driver of the truck was on the left-hand side, the direction from which danger might be apprehended, and in which direction the driver testified he looked several times but saw no approaching train. The plaintiff as a guest had no control or right of direction over the vehicle, and could not easily see around the driver to watch for a train on that side. If his explanation that by leaning forward he might have had a wider vision, but did not do so because of the danger of interfering with the control of the car, seems somewhat unconvincing, we nevertheless are not in a position to say as a matter of law that it might not be true.

The question then, is: Was the trial court entitled to say, or are *we* warranted in saying, as a matter of law, that reasonably prudent persons in the same situation might not say that the guest was lacking in ordinary care in committing his safety and the direction and guidance of the truck to Bumgardner? We think the court was right in holding that the jury should give the answer. This is in line not only with the almost universal holdings in other jurisdictions, but with our own decisions.

This, from 5 Am. Jur., Automobiles, sec. 486, states the general rule:

"In the determination of the contributory negligence of the passenger, it is for the jury to decide whether he exercised such care for his own safety as a reasonably prudent person would have exercised under like circumstances."

This from the same section:

"The mere sight of a railroad crossing, however, by a passenger in an automobile approaching such crossing does not of itself impose a duty to warn the driver of what lies ahead."

This from the same authority, sec. 712:

"The duty of an invited passenger in an automobile is so dependant upon special circumstances, and upon such varied and conflicting notions of the propriety of interference in the management of the automobile, that in cases of accident the

courts are loath to hold such a passenger guilty of contributory negligence as a matter of law. Ordinarily, the question of the contributory negligence of a guest in an automobile involved in a collision, is for the jury to decide in the light of all the surrounding facts and circumstances.''

The following language from our own decision, De Graff, J., speaking for the court, in Glanville v. Chicago, R. I. & P. R. Co., 196 Iowa 456, at page 460, 193 N. W. 548, 550, is in line with the general rule:

''The instant case calls for the application of the reasonably prudent person rule. Did the plaintiff act as a reasonably prudent person should have acted under similar circumstances? She was under obligation of looking and listening for approaching trains within a reasonable distance of the crossing and she had no right to assume that no train would pass. She was bound by the same degree of care required of any traveler about to cross a dangerous intersection. Plaintiff was not in charge of the machine and she had the right to observe and rely upon what the driver was doing and his care for the safety of himself and other passengers. This did not absolve plaintiff from her duty to use reasonable care, but a court is not privileged to say that the passenger is guilty of negligence because the same degree of vigilance in looking and listening is not exercised as is required of the person having control and management of the vehicle. It is a question of degree, but it is ordinary care under the circumstances nevertheless, and ordinarily a jury question. [Citing cases.]

''It is by these tests that her negligence must be measured but there is no fixed or inflexible rule. The law does not fix any point at which the traveler must look and listen or be chargeable with contributory negligence.'' (Citing cases.)

This language from Shepherd v. Bremner (Iowa), 260 N. W. 48, at p. 61, has a direct bearing:

''The driver of the truck was apparently a man of considerable experience in driving a truck who had been driving over this road and this crossing for some time. He apparently was in the exercise of a high degree of care. He stopped, looked, and listened when 75 feet from the crossing, if the testimony of the plaintiff is to be believed (and his credibility was for the

jury). This would quite naturally give to the plaintiff a sense of security and throw him off his guard. We have held that the passenger is not under the same obligation to keep a lookout as the driver of the car, and that the question of the amount of care which the passenger should use is peculiarly one for the jury to determine.'' (Citing cases.)

While it will be noticed from this quotation that the driver ''apparently was in the exercise of a high degree of care'', the jury in this case could find, as we have already indicated, that Bumgardner exercised that degree of care that was required of him in his approach to the crossing.

It should be said that the opinion in the Shepherd case was withdrawn on rehearing, and while not a precedent, it is so cogent in its reasoning and so apt in its citation of authorities that it may well be cited as bearing upon the question before us.

As bearing upon the same question, see Carpenter v. Wolfe, 223 Iowa 417, 273 N. W. 169, particularly divisions [2] and [3] thereof as they appear on pages 424, 425 of 223 Iowa (divisions 10 and 11 as they appear on page 173 of 273 N. W.), Stiger, J., speaking for the court; also, Markle v. Chicago, R. I. & P. Ry. Co., 219 Iowa 301, 257 N. W. 771. If further light be needed upon this subject, the authorities will be found gathered in extensive notes in 18 A. L. R. 309; 22 A. L. R. 1294; 41 A. L. R. 767; 47 A. L. R. 293; 63 A. L. R. 1432, particularly at p. 1436; 90 A. L. R. 984, at p. 990; and citations in 96 A. L. R. Blue Book and Supplement to that volume.

■■■ Defendants argue that there was no evidence of negligent speed, and cite a number of authorities to sustain their contention. It is no doubt the rule that no amount of speed of a railroad train is in and of itself negligence except where regulated by statutes or ordinances. It is likewise the rule that any speed may be negligence if, under the circumstances of the particular situation, a slower rate of advance is called for in the exercise of reasonable prudence.

What has been said makes it unnecessary that we analyze the familiar cases dealing with speed and with contributory negligence applicable to cases involving crossing accidents. We think that here was a case fairly for the jury to decide, and we find no error on the part of the trial court in reaching the same conclusion.

Some complaint is made with reference to the instructions. We have examined them and the arguments assailing them, and while perhaps it might be said that, if separated from their proper context and disassociated from the whole, some objection might be made thereto, we are satisfied that there was no error therein. In fact, a reading of these instructions suggests the thought to the mind that the trial court made an especial effort to forestall criticism of the kind frequently urged in crossing accident cases. It seems to us that only stupidity or perversity, neither of which may be attributed to the jury, could have misled them into imposing a greater burden on the defendants than the law required.

Finding no error, the case is affirmed.—Affirmed.

STIGER, C. J., and DONEGAN, HAMILTON, and RICHARDS, JJ., concur.