## SCOTT v. CHICAGO, ROCK ISLAND & PACIFIC R. CO.

### No. 14496.

United States Court of Appeals
Eighth Circuit.

June 18, 1952.

Roy W. Smith, Council Bluffs, Iowa (William H. DeParcq and Robert J. Martineau, Chicago, Ill., on the brief), for appellant.

A. B. Howland, Des Moines, Iowa (Ross, Johnson, Northrop & Stuart, Council Bluffs, Iowa, and R. L. Read, Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This was a personal injury action brought by appellant, Mary E. Scott, against appellee, Chicago, Rock Island and Pacific Railroad Company, to recover damages sustained by her when an automobile owned and driven by her husband collided with the tender attached to and forming a part of appellee's locomotive at a street crossing in Council Bluffs, Iowa. The parties will be referred to as they appeared in the trial court.

The accident occurred on November 21, 1949, at about 6:30 p. m. The night was very dark and the crossing where the accident occurred was a very busy one from the standpoint of street traffic. Plaintiff was a passenger riding with her husband in a Plymouth Coupe. She was about 71 years of age and her husband was 78 years of age. She was seated on the right of her husband. He had driven a car over forty years and was a careful driver, never before having had an accident. The car entered Twenty-First Street, which is a paved street extending north and south. This street is crossed by two sets of railroad tracks extending easterly and westerly. It is also intersected by Second Avenue one block south of the railroad tracks and by Broadway Avenue one block north of the railroad tracks. Plaintiff and her husband lived on Fourth Avenue and on the night of the accident drove in a westerly direction until reaching Twenty-First Street, when they turned north on that street. The car was in good condition as to brakes and lights. The lights were turned on the low beam which is the ordinary city driving range. As they approached the railroad crossing the car was being driven at a speed of between fifteen and eighteen miles an hour and was at all times on the easterly half of the paved street. When the car was about twenty-five to thirty feet from the railroad track Mr. Scott "slowed down and shifted from high to low gear and then proceeded at about eight to ten miles an hour." Both plaintiff and her husband knew they were approaching the crossing and when the car was within a few feet from the track—about eighteen feet—she first looked to the right and left but observed no moving cars or locomotive until the car was four or five feet from defendant's locomotive which was backing onto the crossing from the west. She then called to her husband, "Look out." She heard no bell nor whistle, and no bell was being rung nor other alarm being given. The crossing was not flagged nor otherwise protected by gates, gongs or mechanical devices, and plaintiff testified that there were no lights on the east end of the tender. The southeast corner of the rear end of the tender and the left front fender of the automobile came into contact with each other and plaintiff was thrown from the car onto the pavement on the east side of the street.

Mr. Scott did not hear nor see the locomotive as it was being backed onto this crossing until Mrs. Scott called "Look out". Although he was looking in all directions and the window on his side was half way down he did not see any light whatever shining from the west. He heard no chugging or rattling of the engine. The locomotive was equipped with both a bell and a whistle but the device that operates the bell by air was not working. The ringing of the bell on the locomotive may ordinarily be effected by a rope on the left side and the fireman "that afternoon and evening rang the bell by using the rope." But the rope had broken sometime before this accident so that no signals or warnings of any kind were given as this locomotive backed onto this public crossing.

In stating the foregoing facts we have resolved all conflicts in the evidence in favor of the plaintiff. At the close of all the evidence defendant moved for a directed verdict on the ground, among others, that plaintiff was guilty of such contributory negligence as precluded her right to recover. While the motion states several grounds the court granted it on the sole ground of contributory negligence so that the question presented here is whether or not the evidence was such as to warrant the court in determining as a matter of law that plaintiff was guilty of contributory negligence.

Under Iowa law plaintiff in a tort action has the burden of proving his freedom from contributory negligence. Kinney

v. Larsen, 239 Iowa 494, 31 N.W.2d 635; Mast v. Illinois Central R. Co., 8 Cir., 176 F.2d 157. The trial court was of the view that the evidence as to the negligence of defendant was sufficient to make that an issue for the jury but that the evidence of plaintiff's freedom from contributory negligence was such as to make that issue one of law. There was undisputed evidence of defendant's negligence. The condition of the device by which the bell is sounded and the whistle blown was such as to show a violation of the Locomotive Boiler Inspection Act. 45 U.S.C.A. § 23. This Act has been held not merely for the protection of railroad employees but also to promote the safety of passengers and the public generally. Fairport, P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446; Uric v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282. The various Safety Appliance Acts, 45 U.S.C.A. § 1 et seq., including this Act, have been held to be supplemental to or amendatory of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Whether or not contributory negligence can be pleaded as a defense or whether it may be pleaded in mitigation of damages we need not decide because there was undisputed evidence which certainly would have warranted the jury in finding defendant guilty of negligence regardless of its violation of the Locomotive Boiler Inspection Act.

■ Ordinarily the question of negligence and of contributory negligence is one of fact for the jury. It is the rule in Iowa, as elsewhere, that if there is substantial evidence tending to establish plaintiff's freedom from contributory negligence the issue is one of fact and if reasonable minds may disagree on the issue the question is for the jury, and it is only where the facts are so clear and undisputed and the relation of cause and effect so apparent that but one conclusion may be fairly drawn, that the court is justified in directing a verdict.

■■ Where a verdict has been directed the evidence must be viewed in a light most favorable to the party against whom it has been directed and all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of such favorable inferences as may reasonably be drawn from the facts and circumstances proven. Mattson v. Central Elec. & Gas Co., 8 Cir., 174 F.2d 215; Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615. When so considered we are of the view that the question of plaintiff's contributory negligence was one of fact to be determined by the jury under proper instructions. Frideres v. Lowden, 235 Iowa 640, 17 N.W.2d 396; Finley v. Lowden, 224 Iowa 999, 277 N.W. 487; Thompson v. Waterloo, Cedar Falls & Northern R. Co., Iowa, 50 N.W.2d 363; Johnson v. Omaha & Council Bluffs St. Ry. Co., 194 Iowa 1230, 190 N.W. 977.

In passing on the motion for a directed verdict we think the court overlooked vital testimony. The court erroneously assumed that the undisputed evidence showed that the light on the east end of the tender was on. Plaintiff testified, however, as follows: "There wasn't any lights on the east end of the tender of the water tank that was burning." True, there was other evidence to the contrary but for the purpose of this motion the testimony of plaintiff in this regard must be accepted as true. This testimony we think very important. If, as we must assume, there was no light on the east end of this tender, then as the car was approaching this crossing this unlighted object shrouded in comparative darkness passed onto this crossing without warning or signal of any kind of its approach.

Again it is observed that the court in effect placed upon plaintiff the duty to keep a lookout as she approached this crossing and to warn of any threatened danger. Thus the court said:

"I recognize the fact that she did call out and attempt to warn him is evidence of a lookout on her part, but the fact that she *didn't begin looking,* according to her own testimony, until just a few feet from the track and that she didn't see the locomotive until it was directly in front of her only 3 or 4 feet away, made her observation, it seems to me, useless and her warning

to her husband futile in the circumstances." (Emphasis supplied.)

■ It was not the primary duty of the plaintiff in the circumstances disclosed in this record to keep a lookout. That was the duty of the driver who was in control of the car. As said by the Supreme Court of Iowa in Finley v. Lowden, supra [224 Iowa 999, 277 N.W. 488].

"To one passingly familiar with the decisions on this subject, it is apparent that the rules applicable to a plaintiff in this situation are not the same as those which would control if the driver were himself complaining of injuries sustained."

In the Finley case plaintiff was familiar with the crossing but he did not in fact observe the train in sufficient time to warn the driver and avoid the accident. In that case, as in the instant case, plaintiff had no control over the vehicle and could not easily see around the driver to watch for a train approaching from the opposite side. The court observed that although this explanation seemed unconvincing the question was for the jury.

In Frideres v. Lowden, supra, the alleged contributory negligence of a passenger was considered. The accident in that case happened in daylight and the automobile collided with the second of four cars on a crossing. In the course of the opinion the court said [235 Iowa 640, 17 N.W.2d 400]:

"A passenger in an automobile is not under an absolute duty to see an impending danger in time to interfere and prevent it. Within reasonable limits he may rely upon the skill and judgment of the driver. A passenger is not required to exercise the same degree of vigilance in looking and listening as is required of the driver."

If it was not plaintiff's duty to be on the lookout, then manifestly she could not be charged with negligence for not having undertaken to keep a lookout in time to give effective warning. She could not be charged with negligence in failing to do that which it was not her duty to do. Had it appeared that she undertook the task of keeping a lookout when the car was far enough away to have made it possible for her to have seen the approaching engine had she looked, then she might have been charged with negligence in failing to see what was seeable. But there is nothing to warrant the assumption that she undertook such task until, as the court observed, it was too late, and after she discovered the impending danger she gave prompt notice. In Fry v. Smith, 217 Iowa 1295, 253 N.W. 147, the Iowa Supreme Court held that a passenger in an automobile who fell asleep was not guilty of contributory negligence as a matter of law. It was therefore not plaintiff's absolute duty to be on the lookout.

■■ It is conceded by counsel for defendant that the negligence of a husband driver is not imputed to the wife passenger in the absence of a joint enterprise and the trial court so held. It is suggested in counsel's brief, though not seriously argued, that the negligence of plaintiff's husband was the sole proximate cause of the collision and plaintiff's injuries. Whatever the law on this subject may be in other jurisdictions, we think this contention can not be sustained under the Iowa decisions. At least it could not be said as a matter of law that the negligence of plaintiff's husband was the sole proximate cause of the accident resulting in plaintiff's injuries. Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120.

The judgment appealed from is therefore reversed and the cause remanded with directions to grant plaintiff a new trial.